**<u>EXHIBIT B-4</u>**

**Contract Documents from Corelogic Subpoena Return (First 37 Pages)
(redacted in original) and Trinity Recovery Discovery Return (Last 2 Pages)**

**(redacted in original)**

| Oppy#: | | Index ID#: | |
|--------|--|-----------|--|

## CUSTOMER PROFILE *(Required)*

Company name:  Trinity Recovery Services, LLC                    DBA names: _____

Address:  610 newport center drive   Suite: 635   City: newport beach   State: ca   Zip: 92660
          *(No P.O. Box)*

Business telephone:  (949 )313  - 6161   Ext: 3000   Fax: (855 ) 881 - 4499   Stock Symbol: _____
*(Required)*

Billing address:  610 newport center drive   Suite: 635   City: newport beach   State: ca   Zip: 92660

Billing telephone:  (949 )313  - 6161   Ext: 3000   Fax: (855 ) 881 - 4499

Multiple branches:  ☐ Yes  ☑ No    Bill separately  ☐ Yes  ☑ No    Web site address:  in progress

Length time in business:  Yrs 10    Mos _____    Number of employees:  4    Annual revenue:  $ 500,000
                                                  *(Please include owner if applicable)*

Office location: ☑ Commercial  ☐ Residential/Home Based    Length of time @ current location:  Yrs 1    Mos _____

If Residential / Home Based, please indicate:  ☐ Single Family Dwelling   ☐ Condo / Townhome   ☐ Apartment

Loan origination software: _____   Version #: _____   Current credit report vendor: _____

Corporate company name (if applicable): _____   Telephone: ( ) _____ - _____   Ext: _____

Corporate address: _____   Suite: _____   City: _____   State: _____   Zip: _____
                   *(No P.O. Box)*

Company name as listed with Directory Assistance: _____

## CONTACT INFORMATION *(Required)*

1.  Primary contact
    Name:  DON MADDEN    Title:  PRESIDENT
    Telephone number:  (850 )974  - 4202   Ext: _____   E-Mail address:  damadden@sccreditservices.com

2.  Compliance contact *(individual we can contact with questions or additional information needed to complete compliance verifications)*
    ☑ Same as primary
    ☐ Other   Name: _____   Title: _____
    Telephone number: ( ) _____ - _____   Ext: _____   E-Mail address: _____

3.  Users / Updates contact *(individual who we can send welcome kits to)*
    ☑ Same as primary
    ☐ Other   Name: _____   Title: _____
    Telephone number: ( ) _____ - _____   Ext: _____   E-Mail address: _____

4.  Billing contact
    ☐ Same as primary
    ☑ Other   Name:  Robert Madden    Title:  CFO
    Telephone number:  (949 )313  - 6161   Ext: 1000   E-Mail address:  rmadden@trinityrs.net

CORELOGIC 000001

**TYPE OF BUSINESS** *(Required)*
*(Please attach a copy of business license including DBA, Proof of Affiliation or Non-Profit certification as applicable)*

| | | | |
|---|---|---|---|
| ☐ Corporation<br>State:<br>Date of Incorporation:<br>☑ LLC ☐ Non-Profit<br>State: WY<br>Date of Organization: 6/17/13 | ☐ Partnership<br>☐ Sole Proprietor<br>Business License No:<br>State:<br>Date of Organization: | ☐ Bank:<br>FDIC No:<br>☐ Credit Union<br>Charter No:<br>Exp. Date: | Government Entity:<br>☐ State<br>☐ County<br>☐ City |

☐ Tax Exempt ☑ Federal Tax ID: 46-2999446 ☐ State Tax Exempt *(Must supply correct State Tax Exempt form)* ☐ Other: _____

Nature of Business: ~~Loan Aquisitions and Servicing~~ *JM 11/7/13*
~~Mortgage Lender~~

Intended Use of Credit Reports *(Identify All Uses)*: ~~Review of consumer credit profile~~ *Account Review of Existing Portfolio + Credit Review prior to Aquisitions* *JM 11/5/13*

**Is the company licensed to and/or providing service as any of the following?** *(please check all that apply)*

| | | | |
|---|---|---|---|
| ☐ Adoption Search Firm | ☐ Company or individual in spiritual counseling | ☐ Credit Repair Clinic | ☐ Insurance Claims |
| ☐ Adult Entertainment Service, any type | ☐ Company seeking information in connection with time shares | ☐ Dating Service | ☐ Internet People Locator Service |
| ☐ Asset Location Services | ☐ Company that handles third party repossession | ☐ Diet Center | ☐ Investigative Company |
| ☐ Attorney of Law Office, any type | ☐ Company that locates missing children | ☐ Financial Counseling | ☐ Law Firm |
| ☐ Bail Bondsman | ☐ Condominium/Homeowners Assoc | ☐ For Profit Counselors | ☐ Loan Modification Companies |
| ☐ Bounty Hunter | ☐ Continuity Club | ☐ Genealogical or Hair Research Firm | ☐ Massage Service |
| ☐ Business that operates out of an apartment or unrestricted location within a residence | ☐ Country Clubs | ☐ Health Club | ☐ Timeshare |
| ☐ Check Cashing | ☐ Credit Counseling | ☐ Individual seeking information for their Private Use | |
| ☐ Company Engaged in Insurance Claims | ☐ Private Detectives or Detective Agencies | ☐ Security Services | ☐ Subscriptions (Magazines, book clubs, record clubs, etc.) |
| ☐ Pawn Shop | ☐ News or Media Agency or Journalist | | |
| ☐ Tattoo Service | | | |

**Will the company or does it intend to resell information from the consumer credit report?** ☑ Yes ☐ No *JM 11/7/13*

**BUSINESS REFERENCES** *(Required)*
*i.e. Appraisal, Title, Realtors, Lenders, etc - please exclude vendors (i.e. delivery service, office supply) who cannot verify the nature of your business*

1. Business reference company name: autopal loan servicing software  Account no.: REDACTED

Address: PO box 742  Suite: _____ City: clearfield  State: ut  Zip: 84089
*(No P.O. Box)*

Contact name: Lloyd Roberts  Title: sales and marketing manager

Telephone: ( 888 ) 725 - 4495  Ext: 303  Fax: ( ) -

2. Business reference company name: ADP Payroll Services  Account no.: REDACTED

Address: 16800 aston street  Suite: _____ City: irvine  State: ca  Zip: 92606
*(No P.O. Box)*

Contact name: Evan Domanic  Title: Associate District Manager

Telephone: ( 714 ) 392 - 1614  Ext: _____ Fax: ( ) -

**CREDIT REFERENCES** *(Credit reference is not required if in business less than a year)*
*If Landlord reference information is not available, please provide another Credit Reference who can verify payment history*

1. Credit reference: Worldwide Express/ UPS  Account no.: REDACTED

Contact name: Ellie Frey  Title: Senior Account Executive

Telephone: ( 714 ) 851 - 5516  Ext: _____ Fax: ( ) -

2. Landlord *(if commercial location)*: Irvine Company  Account no.: _____

Contact name: Devon Malone  Title: Senior Associate

Telephone: ( 949 ) 729 - 1476  Ext: _____ Fax: ( ) -

CORELOGIC 000002

**OFFICERS, OWNERS, PARTNERS, MEMBERS or MANAGING PARTNERS** (Required)
Persons listed below must be company officers/owners, (i.e.; CEO, President, Vice President, CFO, General Manager, etc) who are duly authorized to bind the company and extend contract coverage to any locations added in the future. If company is a limited liability company, managers may sign. Please include additional principal names and titles if applicable.

NAME (Please Print)                           TITLE (Please Print)

1. ~~Don Madden~~  Don A. MADDEN III          President

2. **Robert Maddon**                          CFO

**AUTHORIZED SIGNATURE** (Required)
Must be signed by company officer/owner/partner/member/managing partner

I certify that (1) the above information and any attachments hereto, are true and correct, (2) I have direct knowledge of the information and facts set forth in this Customer Profile, and (3) I authorize CoreLogic Credco, LLC to check credit references of applicant. I further authorize CoreLogic Credco, LLC to access my personal credit report from any consumer reporting agency as part of its due diligence process. In addition, I further authorize CoreLogic Credco, LLC to access a business report on the applicant hereto. I further authorize my creditors to treat a photocopy or facsimile of my signature as if it were an original, and accept such as my authorization to release credit information to CoreLogic Credco, LLC telephonically. I give CoreLogic Credco, LLC permission to request business checking account information on the above account as part of CoreLogic Credco, LLC's membership due diligence process. I have also attached a copy of my current driver's license.

Principal's Name: ~~DON MADDEN~~ Don A. MADDEN III      Date: 8 , 12 , 13

Current Home Address: REDACTED        City: REDACTED   ST: REDACTED   Zip: REDACTED

Signature:                            Title: President

Social Security Number: REDACTED 9381     DOB: REDACTED 1986

CORELOGIC 000003

## CONTINUING GUARANTY

The undersigned ("Guarantor") makes this personal guaranty (this "Guaranty") for the benefit of CoreLogic Credco, LLC ("CREDCO" or "FAC"), and its successors and assigns, in consideration of CREDCO's agreement with Client named and signing the Agreement for Service between CREDCO and the Client (the "Agreement for Service") to extend credit to Client for the purpose of purchasing credit reports and other products and services in accordance with the Agreement for Service. Guarantor represents that by reason of his or her ownership or other significant interest in Client, he or she will obtain significant benefits from the extension of credit to Client by CREDCO under the Agreement for Service, and recognizing that CREDCO would not extend such credit to Client absent this Guaranty, the Guarantor hereby personally guarantees and promises to pay to CREDCO when due all indebtedness to CREDCO that Client has incurred, does now incur, or hereafter incurs for products and services under the Agreement for Service as in effect from time to time (including under all exhibits and addendums to such agreement), and such indebtedness includes, without limitation, all fees, late charges, collection expenses, and attorney fees, whether at trial, appeal, and/or any bankruptcy proceeding (together, "Guaranteed Obligations"). For purposes of this Guaranty, the term "bankruptcy proceeding" includes all actions and proceedings under any insolvency, bankruptcy, reorganization, moratorium, or other debtor relief act or statute, whether now existing or later enacted, and all similar proceedings. The liability of the Guarantor under this Guaranty shall continue until payment of all Guaranteed Obligations and all other amounts owed by Guarantor under this Guaranty have been paid in full. This Guaranty is one of payment due and not of collection, and is unconditional, and the obligations of Guarantor under this Guaranty are absolute and irrevocable and are primary not secondary. Words of "guarantee" contained herein in no way diminish or impair the absolute liability hereby created. CREDCO may, at its option, proceed in the first instance against the Guarantor to collect the Guaranteed Obligations without first proceeding against Client, and Guarantor waives all rights, by statute or otherwise, to require CREDCO to institute suit against Client or to exercise diligence in enforcing the Agreement for Service against Client or this Guaranty against the Guarantor.

To the maximum extent permitted under applicable law, Guarantor hereby waives: (a) acceptance of this Guaranty, (b) demand, notice of dishonor, presentment for payment, protest and notice of protest, and of non-performance on any or all Guaranteed Obligations, and (c) all surety and other defenses legally available to Guarantor (including, without limitation, subrogation, cross-claim, counterclaim, reimbursement, subordination, setoff, exoneration, statute of limitations, changes to or assignment of the Agreement for Service or the Guaranteed Obligations). Guarantor agrees to: (i) all extensions, modifications, and changes to, and renewals of, the Agreement for Service (and all exhibits and addendums thereto), (ii) all extensions, accelerations, and other changes in the time for, or the amount of, any payment provided in the Agreement for Service and any other terms or provisions thereof, and (iii) termination of the Agreement for Service by either party thereto, and Guarantor further agrees that none of the foregoing shall affect any of Guarantor's obligations under this Guaranty.

This Guaranty shall remain in full force and effect notwithstanding any action taken or suffered by Client under any bankruptcy proceeding, or the disaffirmation of the Agreement for Service in any action under any such proceeding or otherwise. This Guaranty shall be binding upon Guarantor and Guarantor's heirs, administrators, personal and legal representatives and successors and assigns and shall inure to the benefit of CREDCO and its successors and assigns. CREDCO may, without notice, assign this Guaranty, the Agreement for Service, or any amounts or payments hereunder or thereunder, in whole or part.

In the event of non-payment of any amount owed by Guarantor under this Guaranty, Guarantor personally agrees to pay all of CREDCO's collection costs, whether or not litigation is instituted, including, without limitation, CREDCO's reasonable attorney's fees and costs of suit (whether at trial, on appeal, and/or in any bankruptcy proceeding), and all other collection costs. In the event that Guarantor fails to pay any amount owed under this Guaranty when due, the unpaid amount will bear interest at the rate of the lesser of 1.5% per month and the maximum amount permitted under applicable law, until paid in full. This Guaranty shall be interpreted in accordance with the laws of the state of California, without reference to its principles of conflict of laws. Guarantor irrevocably consents to the exclusive jurisdiction and venue of the federal and state courts in San Diego County, California, with respect to all disputes in connection with this Guaranty. Guarantor authorizes Guarantor's and/or Client's creditors, references and other persons having information on either of them (including companies, governmental agencies, and all other sources) to release to CREDCO all information concerning Guarantor and/or Client that CREDCO deems pertinent, including, without limitation, data on current and previous credit history, whether the name of Guarantor and/or Client appears on any list maintained by the Office of Foreign Assets Control ("OFAC Lists"), and on all other matters. Guarantor also authorizes and instructs CREDCO to obtain credit reports, OFAC List information, and all other information on Guarantor and/or Client to the extent CREDCO deems appropriate. Each of these authorizations is made by Guarantor on behalf of both Guarantor and Client, and each is a continuing authorization that permits CREDCO to obtain such information at any time or times so long as this Guaranty or the Agreement for Service is in effect or any Guaranteed Obligations are outstanding.

Company Name: trinity recovery services, llc

| | | | |
|---|---|---|---|
| Name: REDACTED | Title: | President | SSN: REDACTED |
| Home Address (No P.O. Boxes): REDACTED | City: REDACTED | | State: REDACTED Zip: REDACTED |
| Home Address (No P.O. Boxes): | City: | | State: Zip: |
| (if above address for less than 2 years) | | | |
| Phone: REDACTED | Fax: | | Email: REDACTED |
| Signature: REDACTED | Date: | 8 / 12 / 2013 | |

CORELOGIC 000005

Trinity Recovery Services, LLC in Newport Beach, CA | 610 Newpo...     http://www.superpages.com/bp/Newport-Beach-CA/Trinity-Recove...

**Trinity Recovery Services, LLC**

Write a Review   ☆☆☆☆☆ Not Rated

610 Newport Center Drive Suite 635, Newport Beach,
CA 92660
Email this business
**(949) 313-6161**

Trinity Recovery Services is a Newport Beach,
California based real estate investment firm. Trinity
believes that highly profitable and long-term
relationships can be achieved by combining our
access to non-performing assets and our skills in the
collection, conversion and sales process of those
assets

Improve this Listing | Business Owners Update Information

## Business Details

Category  (Edit)
Financial Services



**Are You the Business Owner?**

Claim your free business listing on Superpages.com and add
important information about your business online. The more reviews
and additional information you provide about your business, the
easier it will be for customers to find you online.

    Manage your reviews and ratings

    Create coupons

    Connect with customers

            Claim My Listing

Data provided by one or more of the following: SuperMedia, Acxiom, Infogroup.

1 of 1

11/11/2013 7:10 AM

CORELOGIC 000006


CoreLogic
Credco

| Inspection ID: 268820 | |
|---|---|
| **Company Name:** TRINITY RECOVERY SERVICES LLC | **Client:** Corelogic Credco |
| **Contact Name:** DON MADDEN | **Address:** 610 NEWPORT CENTER DRIVE #605 NEWPORT BEACH, CA 92660 |
| **Contact Phone#:** (850) 974-4202 | **Requested:** 11/17/2013 |
| **Contact Email:** DAMADDEN@TRINITYIFS.COM | **Scheduled:** 11/13/2013 1:30 PM |
| **Customer Survey:** Not Submitted | **Reference** 7175904 |
| **Requested By:** Sheryl Ramos | **Conducted:** 11/13/2013 1:20 PM |
| **PA Tracking #:** 7175904 | **Reported Date/Time:** 11/14/2013 11:54 AM |
| **History:** View History | **Re-Order:** Place Re-Visit Order |

| Universal Bureau Form | |
|---|---|
| **Admin** | |
| 1 The office is located in: | ☑ A Commercial Building |
| | ☐ A Store/Shopping Center/Mall |
| | ☐ An Executive Suite with Shared Receptionist |
| | ☐ A Residence |
| Are there locked doors between the companies? | ◉ Yes |
| | ◉ No |
| | ◉ There is only one company. |
| 1A Residence, is there a separate entrance for the business? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| If no, is access through the living quarters required to reach business/office? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| 1B Residence, is the business operation physically separate from the living quarters? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| 1C Residence, have security measures been taken to restrict access to the work area? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| 1D Residence, is there a permanent sign identifying the business on premises? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| 1E Residence, is there a separate phone with a listing under the name of the business? | ◉ This is not a residence. |
| | ◉ Yes |
| | ◉ No |
| 1F Residence, total employees working from this location? (May include Owner) | |
| 2 Is the business actually located at the address stated on the application? | ◉ Yes |
| | ◉ No |
| Does the location seem appropriate for the type of business? (e.g. a mortgage company should have office space available for brokers and loan processors and be in a location accessible to the public) | ◉ Yes |
| | ◉ No |
| 3 Is there a permanent sign on the door or window, which identifies the company? | ◉ Yes |
| | ◉ No |
| 3A Does it reflect the same name listed above? | ◉ Yes |
| | ◉ There is no sign. |
| | ◉ No. What is the exact name appearing on the sign? |
| 4 Are the signs and/or advertisements consistent with the type of business listed above? | ◉ Yes |

| | | | |
|---|---|---|---|
| | | | ○ No, Please explain. |
| | | | ○ N/A. No Sign. |
| 5 | Does the space appear to be a temporary executive office suite or other temporary facilities? | | ● Yes. How long have they been at the facility? |
| | | | ⦿ No |
| 6 | Is office space shared with another business? | | ○ Yes |
| | | | ⦿ No |
| 7 | Do the space, furnishings, and office equipment match the size/type of the business noted above? | | ⦿ Yes |
| | | | ○ No |
| 8 | Are customer applications/credit reports stored onsite? | | ⦿ Yes |
| | | | ○ No |
| 9 | Is the company name on stationery, business cards, the same as above? (Note: Try to obtain samples of stationary, business cards, and advertisements and forward with the inspection form.) | | ○ Yes |
| | | | ○ No |
| 10 | Is there evidence (i.e. advertising material, business cards, etc.) that the business is involved or associated with any of the unsuitable businesses listed below? | | ○ Yes |
| | | | ⦿ No |
| 10a | (Please check all that apply.) | | ☐ Adult Entertainment Service, any type |
| | | | ☐ Bail Bondsman |
| | | | ☐ Massage Service |
| | | | ☐ Dating Service |
| | | | ☐ Insurance Claims |
| | | | ☐ News Agency, Media Agency, or Journalist |
| | | | ☐ Subscriptions (Magazines, book clubs, record clubs, etc.) |
| | | | ☐ Continuity Club |
| | | | ☐ Asset Location Services |
| | | | ☐ Check Cashing |
| | | | ☐ Company that Locates Missing Children |
| | | | ☐ Financial Counseling |
| | | | ☐ Investigative Company |
| | | | ☐ Pawn Shop |
| | | | ☐ Security Services |
| | | | ☐ Attorney or Law Office, any type |
| | | | ☐ Company or Individual in Spiritual Counseling |
| | | | ☐ Credit Counselling |
| | | | ☐ Genealogical or Heir Research Firm |
| | | | ☐ Law Firm |
| | | | ☐ Business that Operates Out of an Apartment or Unrestricted Location Within a Residence |
| | | | ☐ Private Detectives or Detective Agencies |
| | | | ☐ Internet People Locator Service |
| | | | ☐ Law Enforcement Agency |
| | | | ☐ Company Seeking Info. in Connection with Time Shares |
| | | | ☐ Credit Repair Clinic |
| | | | ☐ Individual Seeking Information for Their Private use |
| | | | ☐ Company that Handles Third party Repossession |
| | | | ☐ Tattoo Service |
| | | | ☐ Diet Center |
| | | | ☐ Health Club |
| | | | ☐ Adoption Search Firm |
| | | | ☐ Bounty Hunter |
| | | | ☐ Country Clubs |
| | | | ☐ For Profit Counselors |
| | | | ☐ Condominium/Home owners Assoc. |
| | | | ☐ Loan Modification Company |
| | | | ☐ Timeshare |
| | | | ☐ Company Engaged in Insurance Claims |
| | | | ☑ N/A None of these apply |

CORELOGIC 000008

| # | Question | Answer |
|---|----------|--------|
| 11 | Does it appear that the prospective customer's stated purpose in obtaining credit reports is compatible with the type of business it appears to be conducting? | ⦿ Yes<br>○ No |
| 12 | Is the business license displayed in the office? | ○ Yes<br>⦿ No. Please explain. *Contact said that he did not have a business license on display.* |
| | If yes, please record: License Number: | N/A |
| 13 | Are customer files stored in locked file cabinets? | ⦿ Yes<br>○ No |
| | How does customer destroy confidential documents? | ☐ Shredder<br>☑ Destruction Service. The name of the Document Destruction Service is: *OC Shred*<br>☐ Other |
| 14 | How will customer receive reports? | ☐ DAT<br>☑ PC<br>☐ ePort<br>☐ Other |
| 15 | Location of equipment to access credit reports: | Contact's office. |
| 16 | Is access equipment restricted? | ⦿ Yes<br>○ No |
| | If yes, how is it restricted? | Password-protected PC and locked door. |
| | If no, is the equipment secured to the desk by a PC lock? | ○ Yes<br>⦿ No |
| 17 | Is PC password protected? | ⦿ Yes<br>○ No<br>○ N/A. There is no PC. |
| 18 | Are PCs viewable by non-employees? | ○ Yes<br>⦿ No<br>○ N/A. There is no PC. |
| 19 | What security features are utilized and/or present at customer's location? (e.g. door, locks, etc.) | Door locks, locking file cabinet, password-protected PC. |
| | Is there a security system present? | ○ Yes<br>⦿ No |
| 20 | How are credit reports secured? | Password-protected PC. |
| 21 | If there are any other factors that raise doubts whether the customer should be served with information, please explain: | |
| 22 | Type of neighborhood surrounding the business: | ☐ Residential<br>☑ Commercial<br>☐ Rural<br>☐ Other: |
| 23 | Status of neighborhood surrounding the business: | ☑ Stable<br>☐ Improving<br>☐ Other: |
| 24 | Leasing Company Name and Telephone Number (If this information is not available, Check "Not Available", do NOT write "N/A". | ⦿ Available? List Name and Phone Number: *The Irvine Company,* 949-452-5300<br>○ Not Available |
| 24a | Are there signs in front of the building or in the lobby referring to the Leasing Company/Agent? | ⦿ Yes<br>○ No |
| 24b | If yes, what is the information? | The Irvine Company |
| 26 | General Comments, if any: | Contact stated that the company business recently underwent a name change from Trinity Financial Services to Trinity Recovery; the business card reflects the old name. |

CORELOGIC 000009

## AGREEMENT FOR SERVICE

In order to receive various information services ("Information Service(s)") from CoreLogic Credco, LLC ("CREDCO" or "FAC"), the undersigned Client ("Client") agrees to the terms and conditions set forth in this agreement and the exhibits attached hereto (together, this "Agreement"). If there is a conflict between the general terms and conditions of this Agreement and any exhibit, the provisions of the exhibit will govern and control. This Agreement applies to every kind of information, software or service provided by CREDCO to Client, even if a given type of service or information is not specifically referred to in this Agreement or is not currently provided by CREDCO, unless the service is furnished pursuant to a separate written agreement with CREDCO, executed and effective after the date this Agreement becomes effective, and containing an "entire agreement" clause. THIS AGREEMENT DOES NOT ESTABLISH ANY OBLIGATION ON THE PART OF CREDCO TO PROVIDE ANY INFORMATION SERVICES TO CLIENT UNTIL CREDCO HAS NOTIFIED CLIENT THAT ACCOUNT SET-UP HAS BEEN COMPLETED AND CREDCO HAS ISSUED ACCESS CODES TO CLIENT.

1. CREDCO will provide its Information Services, as available, to Client and Client Affiliates during the term of this Agreement. "Client Affiliates" are those entities listed in Exhibit "A", which are and will be at all times entities, which are controlled by, or are under common control with Client. "Control" means having the ability to direct the management and policies of the entity in question, whether directly or indirectly. Client represents and warrants that it has the full power and authority to bind each Client Affiliate to every obligation of Client in this Agreement, and Client's signature to this Agreement will bind each Client Affiliate. At CREDCO's request, Client will cause any Client affiliate to provide CREDCO with written certification substantially similar to the ones made by Client in Sections 2 and 20 below. References throughout this Agreement to "Client" will apply as well to any Client Affiliate using the Information Services, as appropriate.

2. Client certifies and agrees that it will order Information Services as an end-user. Client further certifies and agrees that it will order Information Services that are consumer reports ("Basic Reports") Client's credit risk scores ("Scores") and other enhancements to the Basic Reports solely for the permissible purposes Client has specified in Section 20 below and no other purpose. For purposes of this Agreement, the term "Credit Reports" includes Basic Reports, Scores, and other enhancement to Basic Reports, individually or collectively, as the context requires. Client agrees to obtain a signed written authorization from each consumer prior to ordering a Credit Report on such person, will maintain all authorizations on file for at least five (5) years, and will provide CREDCO with copies (or originals) on request. Exhibit B is hereby reserved.

3. Client agrees that it will not order Credit Reports for employment purposes or transactions not initiated by the consumer (prescreening) unless approved beforehand in writing by CREDCO. *Client agrees not to resell or otherwise disclose Credit Reports (or any part thereof), except in connection with the sale of a loan to which the Credit Report relates, to the consumer if adverse action has been taken based on the report, or as otherwise required by law.* Client agrees to refer consumers to CREDCO for all substantive inquiries regarding Credit Reports, to obtain the written permission of the consumer to obtain the Credit Report where required under applicable state laws in the form required under such laws, and to provide all notices and disclosures required under federal and state laws. Client understands that the Fair Credit Reporting Act ("FCRA"), 15 USC 1681 et seq., provides that any person "who knowingly and willfully obtains information on a consumer from a consumer reporting agency (such as CREDCO) under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both." Client acknowledges that it understands its obligations under the FCRA and applicable state laws in ordering and using Credit Reports, and Client agrees that it will comply with all such obligations and will be responsible for its own regulatory compliance.

4. Client represents that it is not a(n) private detective, detective agency, investigative company, bail bondsman, attorney, law firm, credit or financial counseling firm, "credit repair clinic," news or media agency or journalist, law enforcement agency, company engaged in insurance claims, dating service, asset location service, internet people locator service, diet center, adoption search firm, timeshare, pawn shop, company that locates missing children, massage service, genealogical or heir research firm, check cashing entity, an adult entertainment service of any kind, business that operates out of an apartment or unrestricted location within a residence, company that handles third party repossession, company or individual involved in spiritual counseling, individual seeking information for their private use, tattoo service, business engaged in subscriptions (magazines, book clubs, record clubs, etc.), health club, continuity club, bounty hunter, condominium/homeowners association, country clubs, "for profit counselors", loan modification companies, timeshare or a person that will not be an end-user of the Information Services, and Client agrees to notify CREDCO PRIOR to any change in any of the foregoing. Except as provided elsewhere in this Agreement, Client agrees not to sell, re-sell, transfer or otherwise distribute the Information Services (or any information contained therein) without first obtaining the written permission of CREDCO.

5. Client acknowledges it has obtained a copy of the "Notice to Users of Consumer Reports: Obligations Under the FCRA" from CREDCO at CREDCO's website http://www.credco.com/legaldocuments/NoticeToUser.pdf. Copies are also available directly from the CFPB at www.consumerfinance.gov. Client will comply with all requirements under the Fair Credit Reporting Act and applicable state laws in ordering and using Credit Reports, and Client is solely responsible for its own regulatory compliance. Client acknowledges it has received a copy CREDCO's Access Security Requirements, from the website http://www.credco.com/legaldocuments/AccessSecurity.pdf and Client agrees to comply with such requirements as modified by CREDCO from time to time and posted on that website. Client agrees to monitor such website on a monthly basis to obtain notice of any changes to the Access Security Requirements and Client agrees to comply with any and all such changes to the Access Security Requirements.

6. Section 1785.14(a) of the California Civil Code imposes special requirements with respect to transactions in which a "retail seller" (as defined in Section 1802.3 of the California Civil Code) intends to issue credit to a California resident who appears in person on the basis of an application for credit submitted in person. Client certifies that these requirements do not apply to it because (a) Client is NOT a "retail seller" (as defined in Section 1802.3 of the California Civil Code), and/or (b) Client does NOT issue credit to California residents who appear in person on the basis of applications for credit submitted in person. Client further certifies that it will notify CREDCO in writing 30 days PRIOR to becoming a retail seller or engaging in point of sale transactions with respect to California residents.

7. The following provisions are applicable to Scores provided under this Agreement:

a. **If Client Orders Any Score.** If Client orders any Score, Client acknowledges and agrees as follows:

(i) Client acknowledges that the Scores and the factors on which the Scores are based are proprietary to the providers of the Scores, and Client agrees to hold all Scores received from CREDCO pursuant to this Agreement in strict confidence and not to disclose any Score to the consumer or to any third-party, except for disclosure to the subject of the Score where Client has taken "adverse action" against such subject based in whole or part on the Score or the Basic Report with which the Score was delivered or as otherwise required under applicable law. For purposes of this Agreement, "adverse action" has the meaning assigned to such term under Regulation B (12 CFR Section 202 et seq.) ("Regulation B") promulgated under the Federal Equal Credit Opportunity Act, 15 USC, Section 1691 et seq. ("ECOA").

(ii) Client may provide the principal factors contributing to a Score to the subject of the Score when those principal factors are the basis of Client's adverse action against the subject or as otherwise required under applicable law. Where such principal factors are provided to the subject, Client must describe such factors in a manner that complies with the ECOA and Regulation B. Client agrees not to use any Score as the basis for an adverse action unless the Score factor codes have been delivered to Client together with the Score, and Client agrees periodically to revalidate the Score as required under Regulation B. Client recognizes that all Scores (i) are statistical and may not be predictive as to any particular individual, (ii) are not intended to characterize any individual as to credit capability, and (iii) other factors must be considered in making a credit decision. No Score is intended to characterize any of Client's applicants or customers. Neither CREDCO nor any Score provider guarantees the predictive value of any Score with respect to any of Client's applicants or customers as to credit capability, and neither CREDCO nor any Score provider guarantees that the Score provided to develop the Score and any predictive value of the Score. IN ORDERING A SCORE, CLIENT HAS MADE ITS OWN ANALYSIS OF THE STATISTICAL RELIABILITY AND UTILITY OF USING THE SCORE. Client agrees that it will not use any Score for account management or prescreening.

(iii) Client understands that the providers of the Scores impose specific requirements for Client to use their Scores (as set forth in Exhibit "C", which is incorporated herein by reference, and is found at the website http://www.credco.com/LegalDocuments/Exhibit.pdf. Client acknowledges it has received a copy of Exhibit "C" from the website http://www.credco.com to monitor such website on a monthly basis and agrees to comply with the provisions therein as in effect from time to time and posted on that website as a condition to ordering such Scores. Client agrees to monitor such website on a monthly basis to obtain notice of any changes to the Scores listed on Exhibit C and Client changes made to Exhibit C as a condition to ordering and using the Scores set forth in Exhibit C. In the event of a direct conflict between the terms of any specific requirements of a Score provider and the general provisions of Section 7 of this Agreement or any other provision of the Agreement, the specific requirements of the Score provider shall govern, but only with respect to the provision that is in conflict. In the event that any Score provider adds or otherwise modifies the requirements for Client's use of its Scores, Client agrees that such terms will automatically be incorporated into this Agreement and become part hereof, and that by ordering any such Score or Scores hereunder, Client agrees that such requirements will be binding on Client. The terms of this Agreement shall be applicable to all Scores Client orders hereunder, except for terms that are in direct conflict with the requirements of the Score provider, in which case, such requirements shall govern as provided above. From time to time, CREDCO may make additional credit risk scores available to Client. In such case, each such additional score Client decides to purchase will be a "Score" for all purposes of this Agreement, and Client's use of such Score and related obligations will be governed by the applicable provisions of this Agreement and any additional terms and requirements imposed by CREDCO and/or the provider of the Score.

COMP-AFS-FEB13-AA

8.  In the event that CREDCO provides its software to Client in connection with this Agreement ("Software Product"), Client agrees to be bound by the terms under which the Software Product is provided to Client, whether contained in a shrinkwrap agreement, clickwrap agreement, or otherwise (each, a "Software Product Agreement"). In addition to, and not in lieu of, the specific terms of the applicable Software Product Agreement, Client agrees that THE SOFTWARE PRODUCT IS PROVIDED TO CLIENT "AS IS," WITHOUT ANY WARRANTY OF ANY NATURE. CREDCO DISCLAIMS AND EXCLUDES ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR THAT CLIENT WILL BE ABLE TO ACCESS INFORMATION SERVICES THROUGH IT ON AN UNINTERRUPTED BASIS OR FREE FROM COMPUTER VIRUSES OR SIMILAR DEVICES THAT MAY CAUSE LOSS OF INFORMATION OR DISABLE CLIENT'S COMPUTER SOFTWARE OR EQUIPMENT (COLLECTIVELY, "DISABLING DEVICES").  CLIENT ASSUMES ALL RISK AS TO THE SUITABILITY, QUALITY, PERFORMANCE, AND RESULTS OF THE SOFTWARE PRODUCT.

9.  The Information Services (including Credit Reports) are provided "AS IS."  CREDCO MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTIES ARISING FROM A COURSE OF DEALING OR A COURSE OF PERFORMANCE, WITH RESPECT TO THE INFORMATION SERVICES (OR ANY INFORMATION CONTAINED THEREIN), INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THE ACCURACY, VALIDITY, OR COMPLETENESS OF ANY INFORMATION SERVICE, THAT THE INFORMATION SERVICES WILL MEET CLIENT'S NEEDS, OR THAT THE INFORMATION SERVICES WILL BE PROVIDED ON AN UNINTERRUPTED BASIS OR FREE FROM DISABLING DEVICES, IF ANY, ARE MADE EXPRESSLY DISCLAIMS ALL SUCH REPRESENTATIONS AND WARRANTIES. ALL REPRESENTATIONS AND WARRANTIES REGARDING ANY SCORE, IF ANY, ARE MADE SOLELY BY THE PROVIDERS OF THE SCORE, AND CLIENT RELEASES CREDCO FROM ALL LIABILITIES AND CLAIMS IN CONNECTION WITH RESPECT TO ALL SCORES.

10.  At Client's request, CREDCO will accept orders for Information Services transmitted to either CREDCO's website on the Internet or CREDCO's web servers via the Internet.  CREDCO will transmit Information Services ordered through either such website or servers in such manner that they are accessible only pursuant to the subscriber number and password assigned to Client by CREDCO.  Client acknowledges it has received a copy of CREDCO's Internet Security Requirements from the website http://www.credco.com/legaldocuments/InternetSecurity.pdf and agrees to comply with the provisions therein as may be modified from time to time by CREDCO and posted on that website.  Client agrees to monitor such website on a monthly basis to obtain notice of such changes to the Internet Security Requirements, and Client agrees to comply with any and all such changes to the Internet Security Requirements.  Client agrees that each time it places an order for an Information Service via the Internet, Client is, and will continue to be, in compliance with these requirements.  CLIENT AGREES THAT NOTHING IN THIS SECTION 10 PERMITS CLIENT TO TRANSMIT INFORMATION SERVICES (OR ANY INFORMATION THEREIN) THROUGH THE INTERNET, AND CLIENT AGREES THAT IT WILL NOT DO SO WITHOUT SPECIFIC, WRITTEN PERMISSION FROM CREDCO.  Client agrees that CREDCO may immediately upon notice to Client suspend or terminate orders and deliveries of Information Services via CREDCO website and/or servers if Client is in breach of any requirement under this Agreement or if CREDCO otherwise determines such action is advisable.  CREDCO DOES NOT WARRANT THAT INFORMATION SERVICES WILL BE PROVIDED THROUGH THE INTERNET UNINTERRUPTED OR FREE FROM DISABLING DEVICES, AND IN NO EVENT WILL CREDCO HAVE ANY LIABILITY FOR EVENTS OR CAUSES BEYOND ITS REASONABLE CONTROL.

11.  In no event will CREDCO, any score provider or any other provider of information used by CREDCO in preparing Information Services, any of their respective affiliates, or any of their respective officers, directors, employees, or agents, have any liability to Client for any special, incidental, or consequential damages, including, without limitation, lost profits, business interruption, transmission of Disabling Devices, loss or corruption of data, and the like, arising out of any transactions in connection with this Agreement, including, without limitation in connection with any Information Service or Client's use or inability to use any Software Product, whether incurred as a result of negligence or otherwise, even if such persons or any of them have been advised of the possibility of such damages. Some JURISDICTIONS PROHIBIT THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THAT SUCH LIMITATIONS MAY NOT APPLY TO CLIENT. The maximum liability of CREDCO in connection with an Information Service will not exceed an amount equal to the price paid by Client for such Information Service.  If Client is dissatisfied with any Software Product, Client's sole and exclusive remedy is to discontinue use of that Software Product.

12.  Client agrees that upon reasonable notice, CREDCO may (but has no obligation to), directly or through a third party, audit Client's procedures related to this Agreement (including, without limitation, Client's network, security systems, facilities, practices, and procedures) in order to confirm that Client adequately protects against the improper use of Information Services and that Client is in compliance with CREDCO's Internet security requirements then in effect and all of the other requirements under this Agreement.  Client agrees to fully cooperate in connection with such audits and to make all changes requested by CREDCO required to assure against unauthorized access of Information Services and for Client to comply with the other requirements of this Agreement.

13.  Client agrees to pay in full according to CREDCO's fee schedule as in effect from time to time. Fees may be changed, effective upon written notice. An account is delinquent if the Client has not paid CREDCO's invoice to Client in full within 25 days after the date of the invoice.  Payment terms and obligations may be changed at any time, upon written notice to Client.  CREDCO may impose a late charge of 1.5 percent per month or the maximum rate permitted by law on any delinquent account until paid in full and/or suspend providing Information Services hereunder until all delinquent amounts owed have been paid in full. Client agrees to pay all attorney fees and collection costs incurred by CREDCO in collecting any delinquent account, whether or not litigation is instituted. In the event of any litigation or other action involving this Agreement, the prevailing party shall be entitled to reasonable attorney fees and court costs including all trial, on any appeal, and/or in a bankruptcy or similar proceeding, in addition to any other recovery to which it is entitled.

14.  Client agrees to indemnify, defend, and hold harmless, CREDCO, all Score providers, and all other providers of information used by CREDCO in preparing and providing the Information Services to Client hereunder, their respective affiliates, and the respective officers, directors, employees, agents, and suppliers and other third party contractors of all such persons from and against any and all actions, lawsuits, investigations, proceedings, costs, expenses (including, without limitation, attorney fees and court costs), and other claims or damages arising out of or in connection with any use or disclosure by Client or Client's employees, agents, or contractors of any Information Service (or any information therein or provided in connection therewith), any breach by Client of any of its obligations, representations, or warranties under this Agreement, Client's use of the Software Product contrary to any requirement under the applicable Software Product Agreement or under applicable law, and any claim by the subject of an Information Service or other person based on Client's order or use of any Information Service.

15.  EITHER PARTY MAY TERMINATE THIS AGREEMENT WITHOUT CAUSE OR PENALTY OR (EXCEPT FOR THE SURVIVING OBLIGATIONS DEFINED IN SECTION 17) FURTHER LIABILITY, EFFECTIVE UPON FIVE (5) BUSINESS DAYS PRIOR WRITTEN NOTICE TO THE OTHER PARTY.  In addition, CREDCO may suspend providing Information Services to Client without notice if CREDCO believes that Client has breached any of its obligations hereunder until the breach has been fully cured to CREDCO's satisfaction and CREDCO has received satisfactory assurances that such breach will not reoccur and Client will fully perform its obligations under this Agreement.

16.  Client's failure to pay CREDCO any delinquent amounts in full within five (5) business days after written notice from CREDCO to Client will constitute a Client default and material breach of this Agreement, whereupon this Agreement will automatically and irrevocably terminate without further notice to Client or liability to CREDCO.

17.  Termination of this Agreement will not: (a) release or otherwise affect Client's obligation to pay CREDCO in full for any fees per CREDCO's fee schedule, late charges, attorney fees and collection costs incurred to and including the date of termination; (b) terminate or otherwise affect the disclaimers and limitations of liability contained in this Agreement, which will survive termination of this Agreement; and/or (c) waive or otherwise affect Client's obligation to indemnify and defend under Section 14 of this Agreement, which will survive termination of this Agreement.

18.  This Agreement, constitutes the entire agreement of the parties with respect to its subject matter, and supersedes any contemporaneous or prior written or oral agreements or other communications regarding such subject matter.  No change may be made to this Agreement except by in writing executed by Client and the Compliance Officer or other authorized officer of CREDCO.  This Agreement shall be interpreted in accordance with the laws of the state of California, without reference to its principles of conflict of laws.  Client irrevocably consents to the exclusive jurisdiction and venue of the federal and state courts in San Diego County, California, with respect to all disputes in connection with this Agreement. If any court or other tribunal of competent jurisdiction declares any provision of this Agreement to be illegal or invalid or unenforceable, the legality and validity and enforceability of the remaining parts, terms, or provisions will not be affected thereby and the illegal or invalid or unenforceable part, term, or provision will be deemed not to be a part of, and severable from, the remaining portions of this Agreement.  A signature on a copy of this Agreement received by other party by facsimile or portable document format (PDF) is binding upon the other party as an original.  The parties shall treat a photocopy of such facsimile as a duplicate original.  Client may not assign this Agreement, in whole or in part, without CREDCO's prior written consent.

19.  If Client orders OFAC Screening Service, CREDCO Screening Services, Identity Verification and Fraud Prevention Products, or Tax Return Information Services ("4506-T Direct Reports"), Client acknowledges and agrees to comply with and abide by the additional terms and requirements as set forth in Exhibit 'D', which is incorporated herein by reference and is found at the website http://www.credco.com/LegalDocuments/Exhibit.pdf. Client acknowledges it has received a copy of Exhibit "D" from the website http://www.credco.com/LegalDocuments/Exhibit.pdf and agrees to comply with the provisions therein as in effect from time to time and posted on that website as a condition to ordering such products. Client agrees to monitor such website on a monthly basis to obtain notice of any changes to the products and services listed on Exhibit D and Client agrees to comply with any and all such changes made to Exhibit D as a condition to ordering and using the Information Services set forth in Exhibit D.

CORELOGIC 000024

20. Client certifies that it will order Credit Reports solely for one or more of the following purpose(s) and for no other purpose *(Client must check only those that apply, and, below Client's signature to this Agreement, declare all intended uses of Credit Reports):*

| | | |
|---|---|---|
| ☑ | a. | in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer |
| | b. | in connection with underwriting of insurance involving the consumer |
| ☑ | c. | as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation. Client agrees that if it requests the Services as a potential investor or servicer in connection with a valuation of or an assessment of the credit or prepayment risks associated with, an existing credit obligation, Client shall first obtain the prior written consent of the current account owner of such accounts and make a copy of such consent available to Credco |

21. Client agrees to comply with the requirements set forth in Exhibit "E" which is incorporated herein by reference and is found at the website http://www.credco.com/LegalDocuments/Exhibite.pdf regarding the proper disposal of consumer information. Client acknowledges it has received a copy of Exhibit "E" from the website http://www.credco.com/LegalDocuments/Exhibite.pdf and agrees to comply with the provisions therein as in effect from time to time and posted on that website; Client agrees to monitor such website on a monthly basis to obtain notice of any changes to Exhibit E and Client agrees to comply with any and all such changes made to Exhibit E.

22. Client agrees to comply with all applicable federal, state and local statutes, regulations, and rules, including, without limitation, the applicable provisions of the Fair Credit Report Act as amended by the Fair and Accurate Credit Transactions Act and the Gramm-Leach-Bliley Act, in ordering and using the Information Services.   In the event Client changes its location, ownership, or control, Client agrees to notify CREDCO in writing, within ten (10) days of such change.

23. In the event of any actual or suspected security breach that Client either suffers or learns of that either compromises or is likely to compromise CREDCO data (including, but not limited to Credit Reports) (e.g., physical trespass on a secure facility, computing systems intrusion/hacking, loss/theft of a PC (laptop or desktop), loss-theft of printed materials, etc.) (collectively, a "Security Breach"), Client will promptly notify CREDCO security personnel within one (1) business day of the discovery of such Security Breach and will immediately coordinate with CREDCO security personnel to investigate and remedy the Security Breach, as directed by CREDCO security personnel. Notification to CREDCO shall be made by calling CREDCO at 1-619-938-7003.  Except as may be permitted by applicable law, Client agrees that it will not inform any third party of any such Security Breach without CREDCO's prior written consent; however, if such disclosure is required by applicable law, Client agrees to work with CREDCO regarding the content of such disclosure so as to minimize any potential adverse impact upon CREDCO and its clients and customers. Client also agrees to comply with all applicable federal and state breach laws and to provide timely notification under applicable law to those individuals affected by the Security Breach (including, but not limited to, notification to law enforcement authorities in the jurisdiction of Client and/or individual(s) affected) in the event the Security Breach was caused by or arose from the actions or inactions of Client.  In addition, Client agrees to offer and provide, if accepted, to each affected or potentially affected consumer, credit history monitoring services for a minimum of one (1) year in which the consumer's credit history is monitored and the consumer receives daily notification of changes that may indicate fraud or identity theft.  The monitoring service must include the daily data from at least one (1) national consumer credit reporting bureau. If the root cause of the Security Breach is determined by CREDCO to be under the control of Client. (e.g., employee or former employee fraud, misconduct or abuse, poor information security practices, etc.), CREDCO may assess Client an expense recovery fee.  If the root cause of the Security Breach is determined by CREDCO to be under the control of Client (see above), Client is required to submit written documentation to CREDCO outlining the cause of the breach and suggested remedial actions. If a Security Breach occurs or is suspected to have occurred, CREDCO may take any action it considers appropriate to safeguard CREDCO's data, including but not limited to suspension of Client's access until CREDCO has determined the Client's environment is secure.

24. *The person signing below certifies, represents and warrants that he or she (1) is duly authorized to bind the Company set forth below, to the terms, conditions and certifications of this Agreement, (2) has direct knowledge of the facts certified in this Agreement, and (3) is authorized and hereby consents for Client to receive faxes, including, but not limited to fax advertisements, sent by or on behalf of CREDCO and its affiliates to the fax number(s) indicated below.*

| | | | | |
|---|---|---|---|---|
| Company Name (please print): | Trinity Recovery Services, LLC | | | |
| Street Address (no P.O. Boxes): | 610 Newport Ctr. Dr. | | Suite: | 635 |
| City: | newport beach | State: | ca | Zip: | 92660 |
| Signature: | | Date: | 8 /21 2013 | |
| Print Name: | don allen madden III | Title: | President | |
| Phone No.: | 949.313.6161 | Fax No: | 855.881.4499 | *DM 11/5/13* |
| Federal Tax ID #: | 46-2999446 | | | |

*Account Review of Existing Portfolio and Credit Review*

Intended Use of Credit Reports (identify all uses): ~~Review of debtors credit profile~~ *prior to aquisitions*

Nature of Business:   Mortgage Lender

Additional locations governed by this Agreement:
(List each physical address or attach a separate listing on company letterhead)

Standard AFS Packet                                       Page 4 of 12                                       COMP-AFS-FEB13-AA

CORELOGIC 000025

ACCOUNT REVIEWING/MONITORING
ADDENDUM TO AGREEMENT FOR SERVICE

This Addendum to Agreement for Service ("Addendum") is made and entered into ___11/5/13___, by and between CoreLogic Credco, LLC ("CREDCO") and __TRINITY RECOVERY SERVICES, LLC__ ("Client").

WITNESSETH          8/12/13   DL 11/5/13

WHEREAS, CREDCO and Client entered into an Agreement for Service dated ~~10 2013~~ ("Agreement");

WHEREAS, CREDCO and Client desire to continue their respective rights and obligations pursuant to the terms and conditions set forth in the Agreement;

WHEREAS, CREDCO and Client desire to amend the Agreement so that CREDCO can provide to Client with account review services subject to the terms and conditions of the Agreement as modified by this Addendum.

NOW, THEREFORE, in consideration of the premises and mutual covenants set forth herein, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  In the Agreement, Client has certified that it will request Credit Reports for the purpose of extension of credit or review or collection of an account, in accordance with the Fair Credit Reporting Act. Where Client requests Credit Reports for account review purposes, Client shall make such requests solely for review or monitoring of Client's own open accounts and/or closed accounts with balances owing, and for no other purpose.

2.  CREDCO agrees to make available a Client Account Review ("CAR") inquiry code, to be utilized as instructed from time to time, for the sole purpose of review of an existing account, and inquiries made under the CAR code will be posted to the applicable repositories' (Experian, Equifax, Trans Union) credit file as an account review inquiry, and display as such to a consumer in the event a consumer disclosure is requested. Client certifies that it will use the account review services provided by CREDCO solely for review or monitoring of Client's own open accounts and/or closed accounts with balances owing, and for no other purpose. In the event Client elects to review its closed end accounts, Client certifies that it has the contractual authority to review and/or modify the terms of such accounts. Client further certifies that it will not use the credit information procured for account review purposes for any other purpose, including without limitation, use in connection with any residential mortgage origination, collection of an account, or account valuation or assessment in connection with the acquisition of a portfolio. If Client orders off-line batch format account review services ("Batch Services"), then the following additional terms and conditions apply: (a) Client agrees that it will use the Batch Services only to determine future credit relationships with its customers and will properly advise its customers of the reasons for any adverse action taken; (b) Client may not cancel a specific Batch Service after (i) CREDCO's information provider(s) has provided the names to CREDCO or (ii) CREDCO has provided the names to Client or Client's processor; (c) Client may obtain certain additional items of information regarding consumers as agreed between CREDCO and Client on a project-by-project basis in connection with the Batch Services; (d) Client may retain a copy of the Batch Services output provided to it by CREDCO for a period not to exceed sixty (60) days from the date of the applicable project is completed; (e) Client will document the destruction of such output for audit purposes; and (f) to the extent credit scores are delivered in connection with the Batch Service, then the foregoing terms and conditions will supplement the other terms and conditions governing use of such scores.

3.  THE FAIR CREDIT REPORTING ACT PROVIDES THAT ANY PERSON WHO KNOWINGLY AND WILLFULLY OBTAINS INFORMATION ON A CONSUMER FROM A CONSUMER REPORTING AGENCY UNDER FALSE PRETENSES SHALL BE FINED UNDER TITLE 18 OF THE UNITED STATE CODE, OR IMPRISONED NOT MORE THAN TWO (2) YEARS, OR BOTH.

4.  Client agrees to hold in strict confidence all consumer information received by Client through any account review and not to distribute a copy of the results of the account review to any other party. However, this restriction shall not prohibit Client from discussing with any consumer, who is the subject of an adverse action based on the account review, the reasons for the adverse action. Client shall be responsible for compliance with all laws and regulations to which it is subject.

CORELOGIC 000026

5.      The parties agree that all capitalized terms, unless otherwise defined in this Addendum, shall have the same meaning that is ascribed to them in the Agreement, or any Addendum thereto.

6.      This Addendum together with the Agreement (and any attachments, addenda, and supplements thereto) shall be the complete and exclusive statement of the Agreement between the parties as to the subject matter of the Agreement, and shall be binding, upon each of the parties hereto, their respective successors and to the extent permitted their assigns. Except as specifically set forth in this Addendum, the Agreement shall remain in full force and effect.

7.      This Addendum supplements, but does not alter or supersede the Agreement (and any attachments, addenda, and supplements thereto). With respect to the subject matter of this Addendum, in the event of a conflict between the terms and conditions hereof, and the terms and conditions of the Agreement or any other addenda thereto, the specific terms and conditions set forth in the Addendum shall govern.

8.      Neither this Addendum nor the Agreement can be amended or otherwise modified, except as agreed to in writing by each of the parties hereto.

9.      Each person signing below represents and warrants that he/she has the full power and authority to bind each principal to the obligations of this Addendum.

IN WITNESS WHEREOF, CREDCO and Client have executed this Addendum on the day and year indicated above intending to be bound by all of the terms and conditions of this Addendum.

CoreLogic Credco, LLC                        Client: TRINITY RECOVERY SERVICES, LLC

By: _____              By: _____
       (Signature)                                        (Signature)

Name: _____              Name: DON A. MADDEN III
         (Print Name)                                      (Print Name)

Title: _____             Title: PRESIDENT

CORELOGIC 000027

PORTFOLIO CREDIT REVIEW
ADDENDUM TO AGREEMENT FOR SERVICE

*DM 11/5/13*

*8/12/13  ~~10-22-13~~*

This Addendum ("Addendum") is made with reference to the Agreement for Service dated _____ ("Agreement") between CoreLogic Credco, LLC doing ("CREDCO" or "FAC"), and the undersigned Client. The provisions of the Agreement apply to this Addendum and are incorporated herein by reference. In the event of any inconsistency or conflict between the terms of this Addendum and those of the Agreement, the terms of this Addendum shall control.

1.  CREDCO has developed a unique and proprietary method of delivery statistical credit scoring information ("Portfolio Credit Review Reports"). Portfolio Credit Review Reports can be used as a tool in determining a loan portfolio's value, short- and long-term profitability, and/or inherent risk (delinquency, charge off, and/or bankruptcy).

2.  CREDCO offers two types of Portfolio Credit Review Reports: "Custom" Portfolio Review Reports or "Express" Portfolio Review Reports. Client is familiar with the features of each type.

3.  Client shall identify in each order of a Portfolio Credit Review Report the type of report ("Express" or "Custom") ordered and shall provide all other information and documents required by CREDCO to deliver the reports. Client shall order, and CREDCO shall deliver, Portfolio Credit Review Reports by electronic media acceptable to CREDCO or any other means agreed upon by the parties.

4.  Client certifies that it will use Portfolio Credit Review Reports for one or more of the following purposes and for no other purpose: (a) as a potential investor or servicer, or current insurer, in connection with an evaluation of, or assessment of the credit or prepayment risks associated with, an existing credit obligation; (b) in connection with the review or collection of an account of a consumer to whom Client has extended credit; or (c) to review an account to determine whether the consumer continues to meet the terms of the account. For purposes of the foregoing, the term "account" refers only to "active," "open" accounts. Client agrees to comply with all applicable requirements under the Fair Credit Reporting Act and applicable state laws in ordering and using Portfolio Credit Review Reports, including, without limitation, any applicable requirement under Vermont law requiring consumer consent before ordering a consumer report on a Vermont resident. If Client orders off-line batch format account review services ("Batch Services"), then the following additional terms and conditions apply: (a) Client agrees that it will use the Batch Services only to determine future credit relationships with its customers and will properly advise its customers of the reasons for any adverse action taken; (b) Client may not cancel a specific Batch Service after (i) CREDCO's information provider(s) has provided the names to CREDCO or (ii) CREDCO has provided the names to Client or Client's processor; (c) Client may obtain certain additional items of information regarding consumers as agreed between CREDCO and Client on a project-by-project basis in connection with the Batch Services; (d) Client may retain a copy of the Batch Services output provided to it by CREDCO for a period not to exceed sixty (60) days from the date of the applicable project is completed; (e) Client will document the destruction of such output for audit purposes; and (f) to the extent credit scores are delivered in connection with the Batch Service, then the foregoing terms and conditions will supplement the other terms and conditions governing use of such scores.

5.  Client agrees not to copy, sell, duplicate, transfer, or otherwise distribute any Portfolio Credit Review Report or any information contained therein, except as expressly permitted in this Section 5. If Client is a prospective seller in a loan portfolio sale transaction: (a) Client may permit prospective buyers to review the individual scores in a Portfolio Credit Review Report that Client has ordered on the portfolio with the assigned tracking numbers associated with the scores (which tracking numbers cannot be derived from social security numbers), (b) upon completion of the sale of the portfolio, Client agrees to transfer the Portfolio Credit Review Report and all related data (both demographic and scores) to the buyer, and (c) Client agrees not to maintain a copy of such report or data.

6.  Client recognizes that the review of identified credit files does not guarantee the non-existence of other data, or the subsequent addition or consolidation of other data on the consumer. Client further recognizes that factors other than the scores included in the Portfolio Credit Review Reports should be considered in making a credit or other decision, including the credit report from which the score was derived, the individual credit application, economic and other factors. Factors provided by CREDCO as significantly contributing to the score may be disclosed to consumers as a reason for taking adverse action. However, the credit risk score is proprietary and may not be used as the reason for taking adverse action. Client agrees not to disclose the actual credit risk score to the consumer, unless otherwise required by law. Client will require all persons permitted to receive the Portfolio Credit Review Reports to agree in writing to receive and use the reports in accordance with the terms and conditions set forth in this Addendum.

CORELOGIC 000028

7. Client agrees to pay CREDCO's applicable charges in effect from time to time for each Portfolio Credit Review Client orders. CREDCO's current charges are set forth in Exhibit "A" attached hereto. Such charges may be modified by CREDCO from time to time, effective upon notice to Client. All charges are due in the same manner and subject to the same terms and conditions (including imposition of late charges) as set forth in the Agreement.

8. This Addendum shall continue in effect for all orders of Portfolio Credit Review Reports until this Addendum is terminated. Either party may terminate this Addendum at any time, effective upon receipt of notice by the other party. Such notice shall be sent by U.S. Mail, confirmed fax, or e-mail; provided, however, that if fax or e-mail are used, a hard copy will be mailed to the other party not later than one business day after the fax or e-mail was sent. This Addendum shall terminate automatically, effective on the date the Agreement terminates or expires. Upon termination of this Addendum, CREDCO's obligations to fulfill orders for Portfolio Credit Review Reports placed after the termination date shall terminate. In addition, if CREDCO terminates this Addendum (or the Agreement) for cause (i.e., as a result of a breach), CREDCO shall have no obligation to fulfill orders for Portfolio Credit Review Reports placed prior to termination. All payment obligations of Client relating to orders of Portfolio Credit Review Reports placed prior to the effective date of termination (other than orders that CREDCO elects not to fulfill in connection with terminations for cause as described in the preceding sentence) shall continue until paid in full. This Section 8 and Sections 4, 5, 6, 7, 9, 10, and 11 of this Addendum shall survive any termination.

9. CLIENT HAD MADE ITS OWN ANALYSIS OF THE INFORMATION CONTAINED IN THE PORTFOLIO CREDIT REVIEW REPORTS, INCLUDING STATISTICAL RELIABILITY AND UTILITY OF USING SUCH INFORMATION IN CONNECTION WITH CLIENT'S TRANSACTIONS. CLIENT UNDERSTANDS AND AGREES THAT THE ACCURACY, COMPLETENESS, AND VALIDITY OF THE PORTFOLIO CREDIT REVIEW REPORTS ARE NOT GUARANTEED BY CREDCO, AND ARE PROVIDED "AS IS". CREDCO EXPRESSLY DISCLAIMS ALL WARRANTIES REGARDING THE PORTFOLIO CREDIT REVIEW REPORTS, AND THE INFORMATION CONTAINED THEREIN, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES ARISING FROM A COURSE OF DEALING OR A COURSE OF PERFORMANCE. IN NO EVENT SHALL CREDCO BE LIABLE FOR, AND CLIENT RELEASES CREDCO, ITS AGENTS, EMPLOYEES, INDEPENDENT CONTRACTORS AND SUPPLIERS, FROM ANY PUNITIVE, EXEMPLARY, INCIDENTAL, INDIRECT, CONSEQUENTIAL, OR SPECIAL DAMAGES, WHETHER BASED ON CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, DUTY TO WARN, STRICT LIABILITY), WARRANTY, OR ANY OTHER LEGAL THEORY OR ON EQUITABLE GROUNDS, EVEN IF CREDCO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. CREDCO'S MAXIMUM LIABILITY TO CLIENT FOR DAMAGES IN CONNECTION WITH A PORTFOLIO CREDIT REVIEW REPORT PROVIDED HEREUNDER SHALL NOT EXCEED AN AMOUNT EQUAL TO THE PRICE PAID BY CLIENT FOR SUCH PORTFOLIO CREDIT REVIEW REPORT.

CORELOGIC 000029

10.  Client shall defend, indemnify, and hold harmless CREDCO from and against all demands, claims, causes of action, costs, liabilities, and expenses (including, without limitation, reasonable attorney fees), which CREDCO may incur by reason of any improper order or use of Portfolio Credit Review Reports or any information therein by Client or the failure by Client to perform any obligation required hereunder or under any applicable law.

11.  This Addendum supersedes all prior and contemporaneous agreements, communications, understandings by or between the parties relating to Portfolio Credit Review Reports, whether oral or written, and constitutes the entire agreement of the parties with respect to the subject matter hereof.  This Addendum is not effective until executed by CREDCO and may not be modified or amended, except by a writing executed by both parties.  With respect to CREDCO, only a Senior Vice President or the Compliance Officer may execute, modify, or amend this Addendum.

IN WITNESS WHEREOF, each of the parties has duly executed this Addendum, effective as of the date set forth above.

CLIENT   _TRINITY RECOVERY SERVICES, LLC_

By:  _____
     (Signature)

     _Don A. MADDEN II_
     (Print or Type Name)

     _PRESIDENT_
     (Title)


CORELOGIC CREDCO, LLC


By:  _____
     (Signature)

     _____
     (Print or Type name)

     _____
     (Title)

CORELOGIC 000030



CoreLogic

STATEMENT OF WORK 2
FOR CREDCO SERVICES

This Statement of Work 2 for Credco Services ("SOW 2") is between CoreLogic Credco, LLC, a Delaware limited liability company ("Credco"), the service-providing affiliate of CoreLogic Solutions, LLC ("CoreLogic"), and the undersigned customer ("Customer") (collectively, the "Parties," or individually, a "Party"). This SOW 2 is subject to the Master License Agreement dated September 18, 2013 between Customer and CoreLogic, and the attached Credco Services Addendum of even date herewith between Customer and Credco (the "Credco Addendum"), and all subsequent amendments, exhibits, or attachments ("Agreement"). This SOW 2 is effective as of the date of last signature ("SOW 2 Effective Date"). The Parties agree as follows:

I.   SERVICES; FEES:  The following services (the "Services") shall be provided to Customer under this SOW 2.  If the chart below indicates that an Exhibit is attached, the additional terms and conditions set forth in the Exhibit shall apply to those Services.  If the chart below indicates an Exhibit under the Service Specific Restrictions apply, such additional Exhibit(s) referenced in Section 2.5 (Service Specific Restrictions) of the Credco Services Addendum shall apply.

| A. | Credit Reports |
| --- | --- |
| | 1.   Advisory Services:  Credit Hybrid Reports |
| | *See attached Exhibit B (Advisory Services:  Credit Hybrid Report Exhibit)* |
| | a.   Lien Report with GeoAVM Core, Bankruptcy Data, Ownership Data, Liens and Credit Data |
| | Fees: [REDACTED] per report (includes GeoAVM Core, Liens, Bankruptcy Data and Full Credit Data in PDF) |
| | [REDACTED] per report (includes Ownership Data, GeoAVM Core, Liens, Bankruptcy Data and Credit Data) |
| | [REDACTED] per report (includes GeoAVM Core, Liens, Bankruptcy Data and Credit Data) |
| | [REDACTED] per report (includes Ownership Data only) |
| | Minimum Order Fee:  Customer shall pay to CoreLogic a minimum Fee of [REDACTED] per order of Lien Report Services ("Lien Report Minimum Order Fee").  Fees accrued in excess of the Lien Report Minimum Order Fee for a given order do not carry-over towards satisfying the Lien Report Minimum Order Fee for any other order. |

**Additional Fees:**
- *Add state sales tax, where applicable.*
- *3rd Party Access Fees additional, where applicable.*
- *Colorado surcharge is [REDACTED] per person per repository.*
- *Add repository surcharge of [REDACTED] per applicant, per repository.*
- *All fees listed in this SOW 2 are valid for one year but may be subject to immediate change based on data cost adjustments from the national credit bureaus or other third party data providers.*
- *All fees for batch requests shall be based on the number of loans/applicants submitted by Customer for processing.*

The Fees for the Services are payable by Customer to Credco within 30 days following the date of invoice.  With respect to any Advisory Services:  Credit Hybrid Reports: (a) the processing of the same loans multiple times constitutes multiple billings; and (b) there is no discount fee for repeated runs of the same loan.  Notwithstanding anything to the contrary in the Agreement, the Services set forth in this SOW 2 shall be billed by Credco to Customer, and Customer shall pay to Credco the Fees set forth above.

II.   ADDITIONAL TERMS:  The terms and conditions of the Credco Addendum (including all Service Specific Restrictions referenced therein), and any other Exhibits or documents attached to this SOW 2 shall apply to this SOW 2.  Capitalized terms used without definition shall have the meanings ascribed to them in the Credco Addendum and Agreement.

III.   SOW TERM AND RENEWAL:  The term of this SOW 2 is for 12 months, commencing on the SOW 2 Effective Date.  Thereafter, the term shall not renew unless mutually agreed upon by the Parties in writing.  Either Party may terminate this SOW 2 without cause or penalty effective upon five (5) business days' prior written notice to the other Party; provided that Customer shall remain liable for payment of:  (a) all Services delivered to Customer prior to the

CORELOGIC 000031

termination date; and (b) all expenses incurred by Credco for Services ordered by Customer prior to the termination date. In addition, Credco may immediately suspend or terminate orders and deliveries of Services if Credco believes that Customer has breached any requirements under this SOW 2 or if Credco otherwise determines such action is necessary.

IV.   EXECUTION:  This SOW 2 may be executed in any number of counterparts, each of which is deemed an original, and all taken together constitute one and the same instrument.  If this SOW 2 is executed in counterparts, no signatory is bound until all Parties have duly executed this SOW 2 and all Parties have received a fully executed SOW 2.  The Parties acknowledge that any signature transmitted by facsimile or e-mail (in .pdf, .tif, .jpeg, or a similar format), or a photocopy of such transmission, is deemed to constitute the original signature of such Party to this SOW 2. The individuals signing below represent that they are authorized to do so by and on behalf of the Party for whom they are signing.

**THE PARTIES HAVE READ, UNDERSTOOD AND AGREED TO THE TERMS AND CONDITIONS OF THIS STATEMENT OF WORK 2.**

| TRINITY RECOVERY SERVICES, LLC ("CUSTOMER") | CORELOGIC CREDCO, LLC ("CREDCO") |
|---|---|
| By: _____ | By: _____ |
| Authorized Signature | Authorized Signature |
| Name:  Don Allen Madden III | Name:  Michelle Pinnix |
| Title:  President | Title:  Vice President, Division Sales |
| Date:  _2 - 12 - 2014_ | Date:  _2/12/14_ |
| Address:   610 Newport Center Drive, Suite 635 | Address:   10277 Scripps Ranch Boulevard |
|                   Newport Beach, California 92660 |                   San Diego, California 92131 |

CORELOGIC 000032

## EXHIBIT B
### ADVISORY SERVICES – CREDIT HYBRID REPORT EXHIBIT

### LIEN REPORT

**INPUT/OUTPUT FILE:** Customer shall deliver to Credco files consisting of the data elements set forth in Section A ("Input File") below in a format acceptable to Credco. Credco shall deliver a report, which shall include data elements solely from Section B ("Output File"), to Customer. CoreLogic shall, as available, provide the property data elements on the Output File and Credco shall then, as available, provide the credit information for such report. For each request for Lien Report, Customer shall specify which report categories it is requesting and CoreLogic shall provide such applicable data elements, as available, and invoice Customer accordingly. Customer acknowledges that the availability, quality and scope of data varies substantially in time and geography, and circumstances may exist or arise which prevent CoreLogic and Credco from providing such data or achieving complete representation of all data elements in the layout below.

### A. INPUT FILE

| FIELD | DESCRIPTION | Data Type / Max Length | Required / Preferred |
|---|---|---|---|
| PropertyAddress | Address of property, e.g. 123 Main Street | 255 | • |
| PropertyCity | City where property is located, e.g. Dallas | 50 | • |
| PropertyState | State where property is located, e.g. TX | 2 | • |
| PropertyZipCode | Postal Code of Property, e.g. 12345 | | • |
| **Loan** | | | |
| LoanNumber | Loan number used to identify unique loan, e.g. 200700012 | 50 | • |
| OriginalLoanAmount | The original loan amount, e.g. $20000.00 | Money | • |
| OriginalLoanDate | The date the loan originated, e.g. 8/8/2001 | Date | • |
| UPBAmount | The current UPB, e.g. $5000.00 | Money | • |
| OriginalLineLimit | The original line limit for HELOCs only | Money | • |
| **Borrower** | | | |
| Borrower1FirstName | First Name of borrower, e.g. John | 50 | • |
| Borrower1MiddleName | Middle Name of borrower, e.g. Mike | 50 | • |
| Borrower1LastName | Last Name of borrower, e.g. Smith | 50 | • |
| SSSN1 | Social Security Number of borrower, e.g. 123456789 | 9 | • |
| Borrower2FirstName | First Name of co-borrower, e.g. Jane | 50 | • |
| Borrower2MiddleName | Middle Name of co-borrower, e.g. Amy | 50 | • |
| Borrower2LastName | Last Name of co-borrower, e.g. Smith | 50 | • |
| SSSN2 | Social Security Number of co-borrower, e.g. 987654321 | 9 | • |

| Key | |
|---|---|
| • | Required Field |
| c | Preferred Field |

### B. OUTPUT FILE

| Report Section | Field Name | Description | Source |
|---|---|---|---|
| | Advisory LoanID | CoreLogic Unique Identifier | |
| | Loan Number | Client Loan Number or Unique Identifier | |
| | Address | Address of property for analysis | |
| | City | City of property for analysis | |
| | State | State of property for analysis | CLIENT PROVIDED |
| Client Input Data | Zip | Zip of property for analysis | |
| | Mortgagor Name | Name of Mortgagor or Borrower | |
| | Co-Mortgagor Name | Name of Co-Mortgagor or Co-Borrower | |
| | Client Lien - Funding Date | Origination Date of loan provided | CLIENT PROVIDED |
| | Client Lien - Original Balance | Original Loan Amount of loan provided | |

CORELOGIC 000033

| Report Section | Field Name | Description | Source |
|---|---|---|---|
| | Client Lien - Current Balance | Unpaid Balance Amount of loan provided | |
| Borrower FICO Info | FICO | Borrower FICO Score from Credit Report | CREDIT |
| | CO-FICO | Co-Borrower FICO Score from Credit Report | |
| Borrower BK Info | BK Status | Current Bankruptcy status of loan e.g. (Active, Discharged, Dismissed) | PACER |
| | BK Chapter | Current Bankruptcy chapter of loan e.g. (7, 11, 13) | |
| | BK case No | Court filed Bankruptcy Case Number | |
| | BK Filing Date | Current Bankruptcy Filing Date | |
| Last Foreclosure Event on Property | Description | Last Foreclosure event type found from public record on the property regardless of date | CALCULATED FIELD |
| | DocType | Last Foreclosure document found from public record on the property regardless of date | PUBLIC RECORD |
| | RecordingDate | Recording Date on the document as reported from public record | |
| | DocumentNumber | Document Number on the document as reported from public record | |
| | AuctionAmount | Sale Amount at the Foreclosure Auction as reported from public record | |
| | AuctionComplete | Sale Date of the Foreclosure Auction as reported from public record | |
| | Auction Seller / Plaintiff | Seller of the property at the Foreclosure Auction as listed from public record / Plaintiff on recorded foreclosure document | |
| | Auction Buyer / Defendant | Buyer of the property at the Foreclosure Auction as listed from public record / Defendant on recorded foreclosure document | |
| Ownership Match | OwnershipMatch | Field indicating if the current owner found on public record matches the Borrower/Co-Borrower provided by client | CALCULATED FIELD |
| | CurrentOwner1 | The current property owner as found on Public Record | |
| | OwnershipStartType | Flag to illustrate if ownership start date was determined by an actual transfer document found in public record (Actual) or was estimated based on the first time the borrower appears on the document (Estimated) | |
| | OwnershipStartDate | Start Date of property ownership for the borrower/co-borrower as indicated from public record | |
| | OwnershipEndType | Flag to illustrate if the document that transfers the property out of the borrower/co-borrower's name was a Foreclosure Transfer or Non-Foreclosure Transfer | |
| | OwnershipEndDocType | The document type that transfers the property out of the borrower/co-borrower's name | |
| | OwnershipEndDate | End Date of property ownership for the borrower/co-borrower as indicated from public record | |
| Last Foreclosure Event During Borrower Period of | Description | Last Foreclosure event type found from public record during the borrower's period of ownership as set by the | CALCULATED FIELD |

CORELOGIC 000034

| Report Section | Field Name | Description | Source |
|---|---|---|---|
| Ownership | | Ownership Start Date and End Date | |
| | DocType | Last Foreclosure document found from public record during the borrower's period of ownership as set by the Ownership Starte Date and End Date | |
| | RecordingDate | Recording Date on the document as reported from public record | |
| | DocumentNumber | Document Number on the document as reported from public record | |
| | AuctionAmount | Sale Amount at the Foreclosure Auction as reported from public record | PUBLIC RECORD |
| | AuctionComplete | Sale Date of the Foreclosure Auction as reported from public record | |
| | Auction Seller / Plaintiff | Seller of the property at the Foreclosure Auction as listed from public record / Plaintiff on recorded foreclosure document | |
| | Auction Buyer / Defendant | Buyer of the property at the Foreclosure Auction as listed from public record / Defendant on recorded foreclosure document | |
| Client & Other Lien Findings | Estimated Client Lien Position | The estimated lien position of the Client Provided Lien this is estimated by looking at all voluntary liens that were identified both high & low confidence including the client's lien and ranking them in order to find the client's lien position. Data used to estimate lien position includes recording dates, origination dates, book/page/doc numbers, and balances. If the client's lien is found to be released, wiped out through foreclosure, or the client's borrower is found to not be the current owner of the property, the lien position is marked as such and no lien position is reported. **It is assumed that the client lien is active on the given property unless the data indicates otherwise. | |
| | Estimate Client Lien Position Confidence | The client's lien position is given a confidence level indicating whether or not all voluntary liens were found senior to the client's lien were found with "High" confidence. If the client's lien is found to be released, wiped out through foreclosure, or the client's borrower is found to not be the current owner of the property, lien position confidence is marked with 'Lien Flag'. | |
| | Subordination Check Suggested | The analysis does not include any subordination information, this field will indicate "Y" if the client lien is found to be in 1st position but the lien that is found to be in 2nd position has a higher balance than the client lien. | |
| | Lien Findings | Description field indicating whether or not any additional liens were found in addition to the client lien and whether or not they are High or Low confidence. | |
| | Client Lien / Other Lien-1-5 Lien Position | Estimated lien position of said lien | |

CORELOGIC 000035

| Report Section | Field Name | Description | Source |
|---|---|---|---|
| | Client Lien / Other Lien-1-5 Originator | Originator reported on the lien from public record | |
| | Client Lien / Other Lien-1-5 Servicer | Servicer reporting the lien on the credit report | |
| | Client Lien / Other Lien-1-5 Loan Number | Account Number received on the lien from the credit report | |
| | Client Lien / Other Lien-1-5 Original Balance | Original Loan Amount of lien | |
| | Client Lien / Other Lien-1-5 Funding Date | Origination Date of lien | |
| | Client Lien / Other Lien-1-5 Credit Status | Most up to date status reported from Credit Report | CREDIT AND/OR PUBLIC RECORD |
| | Client Lien / Other Lien-1-5 Credit Activity Date | Last activity date reported on the tradeline from credit bureau | |
| | Client Lien / Other Lien-1-5 Credit Reported Date | Most recent date the creditor reported on the tradeline to the credit bureau | |
| | Client Lien / Other Lien-1-5 UPB | Unpaid Balance Amount from the Credit Report | |
| | Client Lien / Other Lien-1-5 Pmt | Current payment amount as reported on the Credit Report | |
| | Client Lien / Other Lien-1-5 Modified | Flag indicating if a modification was recorded on public record or the credit report has a comment indicating the loan was modified | |
| | Client Lien / Other Lien-1-5 Active on Credit | Indicates whether the lien found is still active on credit | |
| | Client Lien / Other Lien-1-5 Confidence | Each reported voluntary lien including the Clients provided lien is given a confidence level of (High or Low) to indicate a successful match between our public and credit databases; High Confidence indicates that said Lien is: 1) Attached to the property/borrower in question 2) Still Active on Credit and Releases have been filed on Public Record | CALCULATED FIELD |
| | Client Lien Released on Public | Flag showing if the lien appears to be released on public record, either a hard or soft release | |
| | Total # Liens Found | Total number of voluntary liens found including High and Low Confidence | |
| | Total # High Confidence Liens Found | Sum of all High confidence liens found | |
| | Total # Liens Found Incl. Client's | Sum of all Liens found including the client lien | |
| | Total # High Confidence Liens Found Incl. Client's | Sum of all High confidence liens found including the client lien | |
| Data Returned & Data Findings | Credit Returned | A flag showing where a credit report was found for the borrower | |
| | Credit Error Message | Error message displaying why a credit report was not able to be found | |
| | Credit Score Exclusion | Error message displaying why a FICO score was not obtained | |
| | Public Returned | A flag showing where Public Record was found for the property | CALCULATED FIELD |
| | Public Message | Error message displaying why Public Record was not found for the property | |
| | Credit Active Mtg Check | A flag showing where Active Mortgages were found on the credit report | |
| | Client Lien on Credit | A flag showing where the client lien was matched to an active mortgage on the credit report | |
| | Public Mtg Check | A flag showing where Public Mortgage data was found for the property | |
| | Client Lien on Public | A flag showing where the client lien was match to a mortgage on public record | |
| GeoAVM Core Cascade | AVM Value | Mid-value automated valuation model | CORELOGIC GEOAVM |

493750-21 2708332 EXECUTABLE MA/MH 02.11.14

CONFIDENTIAL

CORELOGIC 000036

| Report Section | Field Name | Description | Source |
|---|---|---|---|
| | | property estimate. | CASCADE |
| | AVM Value Low | Low-value automated valuation model property estimate | |
| | AVM Value High | High-value automated valuation model property estimate | |
| | Forecast Standard Deviation | Denotes confidence in an AVM estimate and uses a consistent scale and meaning to generate a standardized confidence metric. The FSD is a statistic that measures the likely range or dispersion an AVM estimate will fall within, based on the consistency of the information available to the AVM at the time of estimation. If you think of an archery target with the AVM estimate as the bull's eye, the FSD tells you into which ring around the bull's eye the actual value of a property is likely to fall. | |
| | Client Equity (GeoAVM) | Equity calculation: AVM Value minus client lien current balance | |
| | Total Equity (GeoAVM) | Equity calculation: AVM Value minus Total Amt Open Liens (incl Client) | |
| Equity Analysis | Client Equity (Value Waterfall) | Equity calculation: Waterfall Value minus client lien current balance | CORELOGIC |
| | Total Equity (Value Waterfall) | Equity calculation: Waterfall Value minus Total Amt Open Liens (incl Client) | |
| | Client Equity Group (Value Waterfall) | Bucketing of Client Equity $ amount (gt = greater than, le = less than or equal) | |
| | Total Equity Group (Value Waterfall) | Bucketing of Total Equity $ amount (gt = greater than, le = less than or equal) | |

CORELOGIC 000037

## CREDCO SERVICES ADDENDUM TO
## MASTER LICENSE AGREEMENT

This Credco Services Addendum ("**Credco Addendum**") is entered into by and between CoreLogic Credco, LLC, ("Credco") and the customer identified below in the signature block to this Credco Addendum ("**Customer**") (collectively, the "**Parties**," or individually, a "**Party**"). This Credco Addendum is subject to the Master License Agreement dated September 18, 2013 and all subsequent amendments, exhibits, or attachments thereto ("**Agreement**") between CoreLogic Solutions, LLC ("**CoreLogic**") and Customer. This Credco Addendum is effective as of the date of last signature below.

1.   **SERVICES TO BE PROVIDED UNDER THIS CREDCO ADDENDUM.**

As used in this Credco Addendum, "**Services**" means a "consumer report," as that term is defined in the Fair Credit Reporting Act, 15 U.S.C. 1681 et. Seq., as amended ("**FCRA**"), including credit risk scores ("**Scores**") and enhancements to the consumer report(s) (collectively, "**Credit Reports**"), and such other non-consumer report services as made available by Credco from time to time.

2.   **CREDCO LICENSE TO THE SERVICES.**

2.1   **License Grant.** Subject to the terms and conditions of this Credco Addendum and the Agreement, Credco grants to Customer a non-exclusive, non-transferable, limited license to use the Services solely for Customer's internal business purposes. There are no implied licenses under this Credco Addendum or the Agreement. All rights not expressly granted herein are reserved.

THIS CREDCO ADDENDUM DOES NOT ESTABLISH ANY OBLIGATION ON THE PART OF CREDCO TO PROVIDE ANY SERVICES TO CUSTOMER UNTIL CREDCO HAS NOTIFIED CUSTOMER THAT ACCOUNT SET-UP HAS BEEN COMPLETED, AS DESCRIBED IN THE "ACCOUNT ENROLLMENT PROCESS" PACKET ATTACHED HERETO, AND CREDCO HAS ISSUED ACCESS CODES TO CUSTOMER.

Credco will provide the Services, as available, to Customer and Customer Affiliates during the term of this Credco Addendum. "**Customer Affiliates**" are those entities, if any, listed in Exhibit A to this Credco Addendum, which are and will be at all times entities, which are controlled by, or are under common control with Customer. "**Control**" means having the ability to direct the management and policies of the entity in question, whether directly or indirectly. Customer represents and warrants that it has the full power and authority to bind each Customer Affiliate to every obligation of Customer in this Credco Addendum, and Customer's signature to this Credco Addendum will bind each Customer Affiliate.   At Credco's request, Customer will cause any Customer Affiliate to provide Customer with written certification substantially similar to the ones made by Customer in Sections 2.3(a) and 9 below. References throughout this Credco Addendum to "Customer" shall apply as well to any Customer Affiliate using the Services, as appropriate.

2.2   **General Use Restrictions:**

a.   Customer shall not disclose, disseminate, share, sublicense, resell or otherwise redistribute the Services for any part thereof) to any parent, subsidiary, affiliate (other than a Customer Affiliate) or other third party, except: (i) in connection with the sale of a loan to which the Services relate; (ii) to the consumer if an adverse action (as defined by the FCRA) has been taken based on a Credit Report; or (iii) as otherwise required by law.

b.   Customer shall not: (i) use or store the Services outside of the United States; (ii) allow access to the Services through terminals located outside of Customer's operations, (iii) use the Services to create, enhance or structure any database in any form for resale or external distribution; (iv) use the Services to create derivative products or other derivative works for resale or external distribution; (v) disassemble, decompile or reverse engineer any portion of the Services; or (vi) use the Services in any way that is defamatory, trade libelous, unlawfully threatening or unlawfully harassing.

c.   Customer shall: (i) abide by all applicable federal, state, and local laws and regulations of governing consumers' rights to privacy, including without limitation any applicable non-solicitation laws and

CORELOGIC 000038

regulations, the FCRA, state consumer reporting laws, and the Gramm-Leach-Bliley Act; and (ii) limit access to the Services to those individuals who: (a) have a "need to know" in connection with Customer's business, (b) have been appropriately trained; and (c) agree to not attempt to obtain the Services on themselves, associates, or any other person except in the exercise of their official duties.

d.  Customer shall: (i) obtain any necessary licenses, certificates, permits, approvals or other authorizations required by federal, state or local statute, law or regulation applicable to Customer's use of the Services; and (ii) limit use of the Services to its employees who have been appropriately trained. Customer shall maintain the confidentiality of any usernames and passwords issued by Credco and Customer shall not permit usernames or passwords to be shared amongst its employees. Credco may prohibit concurrent sessions with the same username and password.

**2.3   Credit Report Use Restrictions.**

a.  Customer certifies that it will order Credit Reports as an end user. Customer further certifies that it will order Credit Reports solely for one or more of the permissible purposes set forth in Section 9 and for no other purpose. Customer agrees to obtain either a signed written, recorded verbal, or electronic authorization from each consumer prior to ordering a Credit Report on such person. If the authorization is given in electronic format, the electronic authorization must (a) clearly evidence the consumer's authorization for Customer to obtain the Credit Report, and (b) comply with all applicable federal and state laws and regulations. If Customer obtains the verbal authorization from the consumer, Customer shall obtain a follow up written confirmation from the consumer within three (3) days of obtaining the consumer's verbal authorization. Customer agrees to maintain all authorizations on file for at least five (5) years, and will provide Credco with copies (or originals) on request.

b.  **Customer agrees that it will not order Credit Reports for employment purposes or transactions not initiated by the consumer (prescreening), without Credco's prior written approval.** Customer agrees to refer consumers to Credco for all substantive inquiries regarding the Credit Reports, to obtain the written permission of the consumer to obtain the Credit Reports where required under applicable state laws in the form required under such laws, and to provide all notices and disclosures required under federal and state laws. Customer certifies that it will comply with applicable provisions under Vermont law. In particular, Customer certifies that it will order Credit Reports relating to Vermont residents that are credit reports as defined by the Vermont Fair Credit Reporting Act ("**VFCRA**"), only after Customer has received prior consumer consent in accordance with VFCRA Section 2480e and applicable Vermont Rules. Customer further certifies that it has obtained a copy of Section 2480e of the Vermont Fair Credit Reporting Statute from Credco at Credco's website www.credco.com/legaldocuments/Exhibitbvermontlaw.pdf. Customer understands that the FCRA provides that any person "who knowingly and willfully obtains information on a consumer from a consumer reporting agency [such as Credco] under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both." Customer acknowledges that it understands its obligations under the FCRA and applicable state laws in ordering and using Credit Reports, and Customer agrees that it will comply with all such obligations and will be responsible for its own regulatory compliance.

c.  Customer represents that it is not a(n) private detective, detective agency, investigative company, bail bondsman, bail bond enforcement company, bounty hunter, law firm, credit or financial counseling firm, "credit repair company or credit clinic," loan modification company, news or media agency or journalist, law enforcement agency, foreign company or foreign government agency, weapons dealer, company engaged in insurance claims, dating service, asset location service, Internet people locator service, diet center, adoption search firm, timeshare, pawn shop, condominium/homeowner association, country club, non-governmental agency or business associated with the collection of child support, company that locates missing children, massage service, genealogical or heir research firm, check cashing entity, an adult entertainment service of any kind, business that operates out of an apartment or unrestricted location within a residence, company that handles third party repossession, company or individual involved in spiritual counseling, individual seeking information for their private use, tattoo service, business engaged in subscriptions (magazines, book clubs, record clubs, etc.), health club, continuity club, or a person that will not be an end user of the Credit Reports, and Customer agrees to notify Credco PRIOR to any change in any of the foregoing.

CORELOGIC 000039

d. Customer acknowledges it has obtained a copy of the "Notice to Users of Consumer Reports: Obligations Under the FCRA" from Credco at Credco's website www.credco.com/legaldocuments/NoticetoUser.pdf. Copies also are available directly from the CFPB at www.consumerfinance.gov.

e. Section 1785.14(a) of the California Civil Code imposes special requirements with respect to transactions in which a "retail seller" (as defined in Section 1802.3 of the California Civil Code) intends to issue credit to a California resident who appears in person on the basis of an application for credit submitted in person ("point of sale transactions"). Customer certifies that these requirements do not apply to it because (i) Customer is NOT a "retail seller" (as defined in Section 1802.3 of the California Civil Code), and/or (ii) Customer does NOT issue credit to California residents who appear in person on the basis of applications for credit submitted in person. Customer further certifies that it will notify Credco in writing 30 days PRIOR to becoming a retail seller or engaging in point of sale transactions with respect to California residents.

f. In the event Customer changes its location, ownership, or control, Customer agrees to notify Credco in writing, within ten (10) days of such change ("Change"). In addition, Customer may not assign or transfer any rights or obligations granted under this Credco Addendum until any Change has been properly credentialed and approved by Credco pursuant to Credco's compliance procedures. A change in control constitutes a Change under this Credco Addendum.

**2.4   Non-Credit Report Use Restrictions.** For any Services that are not Credit Reports, Customer shall not use such Services in any way that would cause the Services to constitute a "consumer report" under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. or similar statute, or by any other authority having jurisdiction over the Parties.

**2.5   Service Specific Restrictions.** As applicable, Customer shall comply with the service-specific terms and conditions set forth in the following website: www.credco.com/legaldocuments/LinkedExhibits.pdf, as may be modified from time to time by Credco and posted to such website.

**3.   SECURITY REQUIREMENTS.** At Customer's request, Credco will accept orders for Services transmitted to either Credco's website on the Internet or Credco's web servers via the Internet. Credco will transmit Services ordered through either such website or servers in such manner that they are accessible only pursuant to the subscriber number and password assigned to Customer by Credco. Customer acknowledges it has received a copy of Credco's Security Requirements from the following websites: www.credco.com/legaldocuments/InternetSecurity.pdf and www.credco.com/legaldocuments/AccessSecurity.pdf, and agrees to comply with the provisions therein as may be modified from time to time by Credco and posted on that website. Customer agrees to monitor such website on a monthly basis to obtain notice of such changes to the Internet Security Requirements, and Customer agrees to comply with any and all such changes to the Internet Security Requirements. Customer agrees that each time it places an order for a Service via the Internet, Customer is, and will continue to be, in compliance with these requirements. CUSTOMER AGREES THAT NOTHING IN THIS SECTION 3 PERMITS CUSTOMER TO TRANSMIT SERVICES (OR ANY INFORMATION THEREIN) IN VIOLATION OF THE TERMS OF THIS CREDCO ADDENDUM, INCLUDING THE TERMS OF CREDCO'S INTERNET SECURITY REQUIREMENTS AND CREDCO'S ACCESS SECURITY REQUIREMENTS, AND CUSTOMER AGREES THAT IT WILL NOT DO SO WITHOUT SPECIFIC WRITTEN PERMISSION FROM CREDCO. CREDCO DOES NOT WARRANT THAT SERVICES WILL BE PROVIDED THROUGH THE INTERNET UNINTERRUPTED OR FREE FROM DISABLING DEVICES, AND IN NO EVENT WILL CREDCO HAVE ANY LIABILITY FOR EVENTS OR CAUSES BEYOND ITS REASONABLE CONTROL.

**4.   SECURITY BREACH REQUIREMENTS.** In the event of any actual or suspected security breach that Customer either suffers or learns of that either compromises or is likely to compromise Credco data (e.g., physical trespass on a secure facility, computing systems intrusion/hacking, loss/theft of a PC (laptop or desktop), loss-theft of printed materials, etc.) (collectively, a "**Security Breach**"), Customer will promptly notify Credco security personnel within one (1) business day of the discovery of such Security Breach and will immediately coordinate with Credco security personnel to investigate and remedy the Security Breach, as directed by Credco security personnel. Notification to CREDCO shall be made by sending an email to: CreditServicesInvestigationResponseTeam.cred@corelogic.com. Except as may be permitted by applicable law, Customer agrees that it will not inform any third party of any such Security Breach without Credco's prior written consent; however, if such disclosure is required by applicable law, Customer agrees to work with Credco regarding the content of such disclosure so as to minimize any potential adverse impact upon Credco and its customers. Customer also agrees to comply with all applicable federal and state breach laws

CORELOGIC 000040

and to provide timely notification under applicable law to those individuals affected by the Security Breach (including, but not limited to, notification to law enforcement authorities in the jurisdiction of Customer and/or individuals effected) in the event the Security Breach was caused by or arose from the actions or inactions of Customer. In addition, Customer agrees to offer and provide, if accepted, to each affected or potentially affected consumer, credit history monitoring services for a minimum of one (1) year in which the consumer's credit history is monitored and the consumer receives daily notification of changes that may indicate fraud or identity theft. The monitoring service must include the daily data from at least one (1) national consumer credit reporting bureau. If the root cause of the Security Breach is determined by Credco to be under the control of Customer (e.g., employee or former employee fraud, misconduct or abuse, poor information security practices, etc.), Credco may assess Customer an expense recovery fee. If the root cause of the Security Breach is determined by Credco to be under the control of Customer (see above), Customer is required to submit written documentation to Credco outlining the cause of the breach and suggested remedial actions. If a Security Breach occurs or is suspected to have occurred, Credco may take any action it considers appropriate to safeguard Credco's data, including but not limited to suspension of Customer's access until Credco has determined the Customer's environment is secure.

5. **DISPOSAL REQUIREMENTS.** Customer agrees to comply with the requirements of the Disposal Rule, 16 C.F.R. Part 682, regarding the proper disposal of consumer information.

6. **AUDIT RIGHTS.** Customer agrees that upon reasonable notice, Credco may (but has no obligation to), directly or through a third party, audit Customer's procedures related to this Credco Addendum (including, without limitation, Customer's network, security systems, facilities, practices, and procedures) in order to confirm that Customer adequately protects against the improper use of Services and that Customer is in compliance with Credco's Internet security requirements then in effect and all of the other requirements under this Credco Addendum. Customer agrees to fully cooperate in connection with such audits and to make all changes requested by Credco required to assure against unauthorized access of Services and for Customer to comply with the other requirements of this Credco Addendum.

7. **TERMINATION.** Either Party may terminate this Credco Addendum and any related Statements of Work without cause or penalty effective upon five (5) business days' prior written notice to the other Party. In addition, Credco may immediately suspend or terminate orders and deliveries of Services if Credco believes that Customer has breached any requirements under this Credco Addendum or if Credco otherwise determines such action is necessary.

8. **OTHER TERMS.** Except as otherwise set forth in a statement of work, the Fees for the Services may be changed effective upon 30 days' notice to Customer. The terms and conditions set forth in the Agreement that apply to CoreLogic as a data or information service provider shall be deemed to include Credco and its Score and Information providers, including without limitation the provisions relating to disclaimers, limitations of liability, confidentiality, indemnification and general provisions. Notwithstanding the foregoing, Credco and CoreLogic shall have no obligation to indemnify Customer for any claims arising from the use of third party Credit Reports.

**[SIGNATURES ON THE FOLLOWING PAGE]**

CONFIDENTIAL

CORELOGIC 000041

9. **PERMISSIBLE PURPOSES:** Customer and any Customer Affiliates specified in Exhibit A certifies that it will use the Credit Reports solely for one or more of the following purposes set forth below, and in accordance with the terms and conditions set forth in this Credco Addendum. Customer shall not use the Credit Reports for any other purposes.

*(Customer must check only those that apply):*

| | | |
|---|---|---|
| ☐ | (i) | in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer |
| ☐ | (ii) | in connection with underwriting of insurance involving the consumer |
| ☒ | (iii) | as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation. Customer agrees that if it requests the Credit Reports as a potential investor or servicer in connection with a valuation of or an assessment of the credit or prepayment risks associated with an existing credit obligation, Customer shall first obtain the prior written consent of the current account owner of such accounts and make a copy of such consent available to Credco. |

**IN WITNESS WHEREOF,** the Parties have caused this Credco Addendum to be duly executed. Each Party warrants and represents that its respective signatories whose signatures appear below have been and are on the date of signature duly authorized to execute this Credco Addendum.

**TRINITY RECOVERY SERVICES, LLC**
**("CUSTOMER")**

By: _____
          Authorized Signature

Name:  Don Allen Madden III

Title:  President

Date:  2-12-2014

Address:  610 Newport Center Drive, Suite 635
                Newport Beach, California 92660

Facsimile No.:

Federal Tax ID #:  46-301 4569

**CORELOGIC CREDCO, LLC**
**("CREDCO")**

By: _____
          Authorized Signature

Name:  Michelle Pinnix

Title:  Vice President, Division Sales

Date:  2/12/14

Address:  10277 Scripps Ranch Boulevard
                San Diego, California 92131

Intended Use of Credit Reports (identify all uses): Account Review of Existing Portfolio & Credit Review Prior to Aquisitions.

Nature of Business: Loan Aquisitions and Servicing

Additional Locations Covered by this Agreement: _____

_____

*(List each physical address or attach a separate listing on company letterhead)*

CORELOGIC 000042

## EXHIBIT A

### CUSTOMER AFFILIATES

Each Customer Affiliate must be listed below in order to receive services under this Agreement.  New Affiliates may be added with written notice to Credco.  All Affiliates listed must currently and at all times during the term of this Agreement be controlled by, or under common control with Customer, as defined in Section 2.1 of the Credit Services Addendum.

Customer Affiliate Company Name: _____

Street Address (*No P.O. Boxes*): _____

                      State: _____        Zip: _____

City: _____

                      Title: _____

Contact Name: _____

                      Fax: _____        Email: _____

Phone: _____

Customer Affiliate Company Name: _____

Street Address (*No P.O. Boxes*): _____

                      State: _____        Zip: _____

City: _____

                      Title: _____

Contact Name: _____

                      Fax: _____        Email: _____

Phone: _____

Customer Affiliate Company Name: _____

Street Address (*No P.O. Boxes*): _____

                      State: _____        Zip: _____

City: _____

                      Title: _____

Contact Name: _____

                      Fax: _____        Email: _____

Phone: _____

Customer Affiliate Company Name: _____

Street Address (*No P.O. Boxes*): _____

                      State: _____        Zip: _____

City: _____

                      Title: _____

Contact Name: _____

                      Fax: _____        Email: _____

Phone: _____

CORELOGIC 000043

**To Be Completed and Signed by the Corporate Office Only:**

The person signing below represents and warrants that he or she (1) has the necessary authority to bind the Customer Affiliate(s) set forth above or on the attached listing, to the terms, conditions and certifications of the Agreement and Credit Services Addendum, and (2) is authorized and hereby consents for Customer Affiliate(s) to receive faxes, including, but not limited to fax advertisements, sent by or on behalf of Credco and its affiliates to the fax number(s) indicated above.

| Corporate Company Name: | *N/A* | Existing Corporate Acct#: |
| Signature: | | ate: |
| rint Name: | | itle: |

CORELOGIC 000044

### ACCOUNT ENROLLMENT PROCESS PACKET

The Federal Fair Credit Reporting Act (FCRA), applicable state laws and other regulatory requirements strictly regulate access to consumer credit reports. For this reason, CoreLogic Credco, LLC requires certain information from you before we can process your request for enrollment.

**Enrollment Procedure**

The following is a list of documents we will require in order to activate your account. Please have the <u>same individual sign the documents</u> where signatures are required.

1. **Credco Addendum\*, & Customer Profile:** The attached Customer Profile, together with the Credco Addendum and any applicable Exhibits thereto, must be completed and signed by an authorized individual.

   *\*Exhibit A to the Credco Addendum is required to be completed and signed in order for Customer Affiliates to have access to credit reports.* **PLEASE NOTE THAT IN SECTIONS 2.3(b), 2.3(d), 2.5, and 3 OF THE CREDCO ADDENDUM, YOU ARE REQUIRED TO MONITOR THE WEBSITES SET FORTH IN THOSE RESPECTIVE SECTIONS TO OBTAIN NOTICE OF ANY CHANGES TO THE REQUIREMENTS SET FORTH IN SUCH WEBSITES AND TO AGREE TO COMPLY WITH ANY AND ALL SUCH CHANGES MADE TO THE REQUIREMENTS SET FORTH IN THOSE WEBSITES.**

2. **Physical Inspection Fee:** To ensure FCRA compliance, companies accessing consumer credit reports are required to pass a physical inspection of each of their locations where credit reports will be utilized. The physical inspection fee is $100 per location inspected. Payment for the physical inspection, in the form of a check, should be submitted along with the completed Customer Profile to CoreLogic Credco, LLC. *Please contact your sales representative for more details.* \*\*\**Physical inspections will be conducted on a yearly basis on residential businesses. Physical inspections will be conducted on commercial business only when change of address is requested by the Customer*\*\*\*

3. **Proof of Bona Fide Business:** A copy of a certified business license, or an official state or federally filed document displaying the business name and address must be included with the application. If business is tax exempt, certification must be provided with the application.

For your convenience, we've included a fax cover sheet. Please fax the above-mentioned documents in **FINE MODE** to: **1.800.494.2580**

**Compliance Review**

Once we receive and accept your signed enrollment documents, our Compliance Department will proceed with the following steps:

**Review & Verification:** Review and verification of your enrollment documents may take up to 3 business days.

**Customer Notification:** Once the Compliance Review is complete, a member of our support team will contact you via e-mail or phone to notify you that your account has been activated.

**Customer Support**

Our FCRA certified credit specialists are available by phone, fax and email. If you have any questions about the enrollment process, please feel free to contact us at: 1.800.577.8787.

CORELOGIC 000045

**CUSTOMER PROFILE** *(Required)*

Company name: TRINITY FINANCIAL SERVICES, LLC   DBA names:

Address: (No P.O. box): 610 NEWPORT CENTER DRIVE   uite: 635   ity: NEWPORT BEACH   State: CA   Zip: 92660

Business telephone: (Required): 949.313.6161   xt:   ax: 855.881.4999   tock Symbol:

illing address: 610 NEWPORT CENTER DR   uite: 635   ity: NEWPORT BEACH   tate: CA   ip: 92660

illing telephone: 949.313.6161   xt:   ax: 855.881.4499

ultiple branches:   Yes   (No)   ill separately   Yes   (No)   eb site address: TrinityFS.com

ength time in business:   rs 1   ns   umber of employees: 5   nnual revenue: 10.2 M

*(Please include owner if applicable)*

Office location:   ☒ Commercial   ☐ Residential/Home Based   current location:   rs 1   os
☐ Own   ☐ Rent

Length of time at

oan origination software:   ersion #:   t credit report vendor:   Curren

Corporate company name (if applicable):   elephone:   xt:

orporate address: (No P.O. Box):   uite:   ity:   tate:   ip:

**CONTACT INFORMATION** *(Required)*

1.   **Primary Contact**

Name: DON MADDEN III   itle: PRESIDENT

elephone number: 850.974.4202   xt:   -Mail address: damadden@trinityfs.com

2.   **Compliance Contact** *(Individual we can contact with questions or additional information needed to complete compliance verifications)*

☒ Same as primary

☐ Other   ame:   itle:

elephone number:   xt:   -Mail address:

3.   **Users / Updates** *(Individual who we can send welcome kits to)*

☒ Same as primary

☐ Other   ame:   itle:

elephone number:   xt:   -Mail address:

CORELOGIC 000046

3. **Billing Contact**

☑ Same as primary

☐ Other    ame:    itle:

elephone number: T    xt:    -Mail address:

**TYPE OF BUSINESS** *(Required)*

*(Please attach a copy of business license including DBA, Proof of Affiliation or Non-Profit certification as applicable)*

| orporation ☐ | artnership ☐ | ank: ☐ | vernment Entity: ☐ Go |
|---|---|---|---|
| tate: | ole Proprietor ☐ | DIC No: | tate: |
| Date of Incorporation: | usiness License No: | redit Union: ☐ | |
| *LW* (circled) | tate: | harter No: | ounty: |
| tate: WY | ate of Organization: | xp. Date: | ity: |
| Date of Organization: 6/11/13 | State Tax Exempt (Must supply correct State Tax Exempt form) | ther: | |

**Nature of Business:** LOAN Acquisitions and SERVICING

**Intended Use of Credit Reports (Identify All Uses):** Account Review of Existing Portfolio + Credit Review prior to Acquisitions

**Is the company licensed to and/or providing services as any of the following?** *(Please check ALL that apply)*

| ☐ Adopt ion Search Firm | Company of individual in spiritual counseling | redit Repair Clinic | nsurance Claims |
|---|---|---|---|
| ☐ Adult Entertainment Service, any type | Company seeking information in connection with time shares | People Locator Service | Internet |
| ☐ sset Location Services | Company that handles third party repossession | ng Service | Dati    nvestigative Company |
| ☐ Attorn ey of Law Office, any type | Company that locates missing children | Center | Diet    aw Enforcement Agency |
| ☐ Bondsman | Bail | Condominium/ Homeowners Assoc | ncial Counseling    Firm | aw Firm    L |
| ☐ y Hunter | Bount | Continuity Club | or Profit Counselors | I.com Modification Companies |
| ☐ | Business that operates out of an apartment or unrestricted location within a residence | | Genealo gical or Heir Research Firm | assage Service |
| ☐ | Check | Country Clubs | Heal | CONFIDENTIAL |

493750-212708332 EXECUTABLE MA/MH 02.11.14      Page 17 of 19

| Cashing | | th Club | | imeshare |
| ☐ Engaged in Insurance Claims | Company Counseling | Credit | | Individual seeking information for their Private Use |
| ☐ awn Shop | Private Detectives or Detective Agencies | ecurity Services | | Subscriptions (Magazines, ..., clubs, record clubs, etc.) |
| ☐ attoo Service | News or Media Agency or Journalist | | | |

Does the company now, or does the company intend in the future to, **resell** information from the consumer credit report? ☐ Yes  ☒ No

**OFFICERS, OWNERS, MEMBERS OR MANAGING PARTNERS** *(Required)*
Persons listed below must be company officers/owners (i.e. CEO, President, Vice President, CFO, General Manager, etc) who are duly authorized to bind the company and extend contract coverage to any locations added in the future. If company is a limited liability company, managers may sign
Please include additional principal names and titles if applicable.

**NAME** *(Please Print)*                    **TITLE** *(Please Print)*

1. _DON MADDEN III_          _PRESIDENT_

2. _____

**AUTHORIZED SIGNATURE** *(Required)*
I certify that (1) the above information and any attachments hereto, are true and correct; (2) I have direct knowledge of the information and facts set forth.
Must be signed by company officer/owner/partner/member/ managing partner

Principal's Name: _DON MADDEN III_     Date: _2-12-2014_

Signature: _(signature)_     Title: _PRESIDENT_

CORELOGIC 000048

*Fax Cover Sheet*

**FAX IN FINE MODE**

To:   CoreLogic Credco, LLC
      Client Relations
      (800) 494-2580 fax

From:   Company:   ~~TRINITY FINANCIAL SERVICES, LLC~~
        Contact Name:   ~~DON MADDEN III~~
        Contact Telephone:   ~~850 974 4202~~
        Contact Fax:   ~~855 881 4799~~
        Contact for the physical inspection:   ~~DON MADDEN III~~
        Telephone:   ~~850 974 4202~~

Activation or Set-up Needed For:

Investor: _____   Version: _____

Automated Underwriting System: _____   _____

CORELOGIC 000049


CoreLogic

Page _____ of _____

# Additional Sub-Account Information

Client may request that additional properties, sites, or communities of Client be added as sub-accounts under this Headquarters Account by providing CoreLogic® Rental Property Solutions, LLC with the additional Client sub-account information set forth below. Client may reprint this page in order to list the information for all such additional properties.

Headquarters Account Number: RB698          Headquarters Account Name: Park Ridge Housing Developme

Property Name: Park Ridge Commons                          Account Number: _____

Headquarters Account: ☐ Owns or ☐ Manages/Controls this property.

# of Units: _____          Estimated # of Monthly Reports: _____

Contact Name: _____     Phone: ( 585   ) 368-4204     Fax: ( 585   ) 723-7166

Contact Email Address: **REDACTED**

• Physical Address: 1477 Long Pond Rd
                            *(Do not use P.O. Box numbers)*
        City: Rochester              State: NY                      Zip: 14626

• Mailing Address: same
                            *(if different from Physical Address)*
        City: _____        State: _____        Zip: _____

• Billing Address : same
                            *(if different from Mailing Address)*
        City: _____        State: _____        Zip: _____

• Screening Location: same
                            *(Do not use P.O. Box numbers)*
        City: _____        State: _____        Zip: _____

Property Name: _____                          Account Number: _____

Headquarters Account: ☐ Owns or ☐ Manages/Controls this property.

# of Units: _____          Estimated # of Monthly Reports: _____

Contact Name: _____     Phone: (_____)_____     Fax: (_____)_____

Contact Email Address: _____

• Physical Address: _____
                            *(Do not use P.O. Box numbers)*
        City: _____        State: _____        Zip: _____

• Mailing Address: _____
                            *(if different from Physical Address)*
        City: _____        State: _____        Zip: _____

• Billing Address : _____
                            *(if different from Mailing Address)*
        City: _____        State: _____        Zip: _____

• Screening Location: _____
                            *(Do not use P.O. Box numbers)*
        City: _____        State: _____        Zip: _____

**CoreLogic**

# Additional Sub-Account Information

Page _____ of _____

Property Name: _____     Account Number: _____

Headquarters Account: ☐ Owns or ☐ Manages/Controls this property.

# of Units: _____     Estimated # of Monthly Reports: _____

Contact Name: _____     Phone: (_____)_____     Fax: (_____)_____

Contact Email Address: _____

- Physical Address: _____
  *(Do not use P.O. Box numbers)*
  City:_____   State: _____   Zip: _____

- Mailing Address:_____
  *(if different from Physical Address)*
  City:_____   State: _____   Zip: _____

- Billing Address : _____
  *(if different from Mailing Address)*
  City:_____   State: _____   Zip: _____

- Screening Location: _____
  *(Do not use P.O. Box numbers)*
  City:_____   State: _____   Zip: _____

---

Property Name: _____     Account Number: _____

Headquarters Account: ☐ Owns or ☐ Manages/Controls this property.

# of Units: _____     Estimated # of Monthly Reports: _____

Contact Name: _____     Phone: (_____)_____     Fax: (_____)_____

Contact Email Address: _____

- Physical Address: _____
  *(Do not use P.O. Box numbers)*
  City:_____   State: _____   Zip: _____

- Mailing Address:_____
  *(if different from Physical Address)*
  City:_____   State: _____   Zip: _____

- Billing Address : _____
  *(if different from Mailing Address)*
  City:_____   State: _____   Zip: _____

- Screening Location: _____
  *(Do not use P.O. Box numbers)*
  City:_____   State: _____   Zip: _____

---

**Reviewed and Approved:**

Name: _____     Title: _____

Signature: _____     Date: _____

EndUsePolPro AddSubActInfo frm30 2010-06-01 OPSCP

CORELOGIC 000052

DocuSign Envelope ID: A1636AEE-74AF-4D44-9E06-B78750D88D57

**AMENDMENT 1 TO**
**STATEMENT OF WORK 2 FOR CREDCO SERVICES TO**
**MASTER LICENSE AGREEMENT BETWEEN**
**CORELOGIC CREDCO, LLC ("CREDCO") AND**
**TRINITY RECOVERY SERVICES, LLC ("CUSTOMER")**

This Amendment 1 to Statement of Work 2 for Credco Services ("Amendment 1 to SOW 2") is between CoreLogic Credco, LLC ("Credco"), a Delaware limited liability company, the service-providing affiliate of CoreLogic Solutions, LLC ("CoreLogic"), and Trinity Recovery Services, LLC, a California limited liability company ("Customer") and shall serve to amend Statement of Work 2 for Credco Services, effective February 12, 2014 ("SOW 2"), pursuant to the September 18, 2013 Master License Agreement between Customer and CoreLogic, and February 12, 2014 Credco Services Addendum between Customer and Credco (the "Credco Addendum"), as amended by and between the Parties, all terms of which are incorporated herein by reference (collectively, the "Agreement"). This Amendment 1 to SOW 2 is effective as of the date of last signature below ("Amendment 1 to SOW 2 Effective Date").

## RECITALS

Whereas, SOW 2 expired on February 11, 2015 of its own terms;

Whereas, the Parties desire to continue a business relationship under SOW 2 for the Services commencing on February 12, 2015;

Whereas, the Parties desire to remain to be bound by the terms and conditions of the Agreement and SOW 2;

Now, therefore, in consideration of the foregoing, and of other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. Part III (SOW Term and Renewal) of SOW 2 is deleted in its entirety and replaced with the following:

   III. **SOW TERM AND RENEWAL:** The initial term of this SOW 2 commenced on the SOW 2 Effective Date and ended on February 11, 2015 ("Initial Term"). The first renewal term of this SOW 2 commenced on February 12, 2015 and shall end on February 11, 2016 ("First Renewal Term"). Thereafter, the term will automatically renew for additional successive 12 month terms. Either Party may forego automatic renewal of this SOW 2 by giving the other Party at least 30 days' prior written notice of termination prior to the expiration of the then-current term. Either Party may terminate this SOW 2 without cause or penalty effective upon five (5) business days' prior written notice to the other Party; provided that Customer shall remain liable for payment of: (a) all Services delivered to Customer prior to the termination date; and (b) all expenses incurred by Credco for Services ordered by Customer prior to the termination date. In addition, Credco may immediately suspend or terminate orders and deliveries of Services if Credco believes that Customer has breached any requirements under this SOW 2 or if Credco otherwise determines such action is necessary.

2. Capitalized terms used without definition have the meanings ascribed to them in the Agreement and SOW 2.

3. All other terms of the Agreement and SOW 2 remain in full effect.

**[SIGNATURES ON FOLLOWING PAGE]**

493750-285243123 EXECUTABLE SL 4-10-15

CONFIDENTIAL

TRS000011

**THE PARTIES HAVE READ, UNDERSTOOD AND AGREED TO THE TERMS AND CONDITIONS OF THIS AMENDMENT 1 TO SOW 2.**

**TRINITY RECOVERY SERVICES, LLC ("CUSTOMER")**

By: _____
   Authorized Signature

Name:   Don Allen Madden III

Title:   President

Date:   4/13/2015

Address:   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
   Newport Beach, California 92660

**CORELOGIC CREDCO, LLC ("CREDCO")**

By: _____
   Authorized Signature

Name:   ~~Kendra Rawls~~   Peng Leong

Title:   ~~Senior Vice President, Credit Services~~ Sr. Director, Finance

Date:   4/15/2015

Address:   10277 Scripps Ranch Boulevard
   San Diego, California 92131

CONFIDENTIAL

TRS000012